Mell R. Thompson, Plaintiff-Appellant, v. Chicago & Eastern Illinois Railroad Company, a Corporation, Defendant-Appellee.

Gen. No. 47,892.

First District, Second Division.

October 24, 1961.

Harrison M. Fuerst and O. William Olson, Jr., of Chicago, for appellant.

P. C. Mullen and Gerald J. O'Rourke, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Mell R. Thompson appeals from a judgment entered on a verdict against him in an action under the provisions of the Federal Employers' Liability Act, the Federal Safety Appliance Act and the Federal Boiler Inspection Act to recover damages for injuries suffered during the operation of a locomotive of which

he was the engineer at 3:45 a.m. in Jamaica, Illinois, on February 25, 1957. Plaintiff lived at Danville. He was born May 5, 1889, and had been employed by defendant for more than 40 years. There was competent evidence to support defendant's theory that plaintiff, having full knowledge of the physical characteristics of the railroad in the area involved, caused or permitted a properly operating and equipped diesel electric locomotive, pulling four properly operating and equipped freight cars, to go off the stub end of a spur track and through the air across a creek 10 feet wide because he failed to apply the braking equipment available or failed to apply that equipment in sufficient time to bring the locomotive and four cars to a stop short of the stub end of the track.

■ Plaintiff urges that the verdict is against the manifest weight of the evidence. The power of an appellate tribunal in a FELA action is prescribed by federal law and is limited to ascertaining whether there is any evidentiary basis for the verdict. Bowman v. Illinois Cent. R. Co., 11 Ill2d 186, 142 NE2d 104. Certiorari denied 355 US 837. The foregoing rule applies to verdicts against a plaintiff as well as for a plaintiff. Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 209, 164 NE2d 209. The rule has particular application to questions of causation. Lavender v. Kurn, 327 US 645; Pennell v. Baltimore & O. R. Co., 13 Ill App2d 433, 437, 142 NE2d 497. In oral argument plaintiff recognized the applicability of the Bowman case to the instant case and withdrew his point that the verdict is against the manifest weight of the evidence.

Plaintiff argues that the court erred in granting defendant's motion at the close of all the evidence to strike 12 subparagraphs of Paragraph 6 of his complaint, and withdrawing from consideration of the jury the charges of negligence contained therein. We

are of the opinion that the allegations stricken were surplusage, repetitious or adequately covered by allegations remaining in the complaint. All the theories of the plaintiff under the FELA, and Federal Safety Appliance Act and the Federal Boiler Inspection Act were presented to the jury for their verdict.

■ ■   Plaintiff contends that the court erred in giving certain instructions at the request of the defendant. It does not appear that plaintiff asserted the grounds now urged or any grounds against the instructions at a conference as required by Sec 67(3) of the Civil Practice Act. The purpose of that section is to provide a safeguard against error in instructions which so frequently resulted in new trials or reversals. See Saunders v. Schultz, 20 Ill2d 301, 170 NE2d 163; Onderisin v. E. J. & E. R. Co., 20 Ill App2d 73, 77, 155 NE2d 338, 341; Greenlee v. Shedd Aquarium, 31 Ill App2d 402, 176 NE2d 684.

■ ■   Plaintiff asserts that the court erred in failing to submit his instruction No. 9 reading:

"If you believe from the preponderance of the evidence that the occurrence in question was proximately caused in whole or in part by the failure of the sanding apparatus on the locomotive in question to function efficiently at the time of said occurrence, although applied in a normal, usual and customary manner, then the defendant is guilty irrespective of whether it was or was not negligent."

The substance of this instruction was covered by plaintiff's instructions Nos. 6, 7 and 8 and defendant's instruction No. 1. Plaintiff maintains that the court erred in failing to submit his instruction No. 19, reading:

"The court instructs the jury in reference to the production of witnesses who know about the facts in issue, that if you believe from the facts and circum-

stances in evidence that there is other evidence to rebut the evidence of plaintiff which might be furnished by any witness or witnesses other than the witness or witnesses whom defendant has presented and examined upon this trial, and that such other witness or witnesses is or are available to or subject to defendant and could be produced by it, and if you believe from the evidence that the evidence against defendant, if there is any, is such that it would naturally be expected to call such other witness or witnesses, its failure to do so would be a circumstance which might be considered by this jury and gives such weight and significance as they think it entitled to and from which they might infer, if they think the inference warranted and a reasonable one, from the evidence that such other witness or witnesses would testify unfavorably to defendant if called by it."

Plaintiff says that the only eyewitnesses to the derailment were plaintiff and defendant's other employees in the crew and that it was to defendant's best interest not to call these crew members as witnesses. Plaintiff insists that failure to give this instruction was prejudicial to his case because it should have been revealed to the jury that the best evidence or that of eyewitnesses was not being presented to them due to fear of defendant that their testimony would have been unfavorable. None of the co-workers of plaintiff was called to testify by either party. There is no showing that these crew members were eyewitnesses. There was no evidence introduced at the trial that the crew members told the local physician for defendant that the "brakes didn't hold." We think that the court was right in refusing to give the instruction.

■ Plaintiff states that the court erred in not permitting him to testify as an expert witness. Objections were sustained to the following questions: "Now, what,

if anything happens to the piston in an air cylinder when air is applied into that cylinder?" "What is the relationship between amount of piston travel and amount of pressure that is applied on a brake shoe to a wheel?" Plaintiff calls attention to the fact that the evidence shows that he had been working for the railroad 40 years and that before becoming an engineer in 1945 he was working in the car yard on engines. There is nothing in the record which suggests that plaintiff was competent to testify as to the technical aspects of the operation of air brakes. He recognized his lack of knowledge of the subject. The trial judge did not abuse his discretion in declining to permit plaintiff to testify as an air brake expert.

■ Plaintiff says that the court erred in sustaining defendant's objection to plaintiff's testimony concerning derailment mechanism at the end of the track. Plaintiff inquired: "On the night of this accident, was there any derail mechanism at the end of that railroad track in Jamaica, Illinois?" The court sustained defendant's objection on the ground that the question called for a conclusion. We think that the court should have permitted the witness to answer the question. From the evidence and exhibits the jurors became conversant with the terrain and the conditions of the track and appurtenances at Jordan Creek. There was no derail mechanism at Jordan Creek. In view of the abundant evidence as to the occurrence we find that plaintiff was not harmed by the court's ruling in sustaining the objection to the question about derail mechanism.

■ ■ Plaintiff asserts that the court erred in refusing to permit his witness, Dr. James E. McKibben, the assistant district surgeon for the Danville district of the defendant, to testify as to what the injured members of plaintiff's crew told him after the accident regarding the defective brakes. An examina-

403

tion of the record does not disclose that Dr. McKibben was prevented from testifying on this point. He was asked by plaintiff's counsel what the plaintiff had told him, the witness, as to the account of the event. The witness began his answer, "It is my understanding from what these four men told me that they were—," when defendant's attorney interposed an objection that the answer was not within the scope of the question. The objection was sustained. The mishap occurred at about 3:15 a. m. The conversation with Dr. McKibben was at about 5:00 a. m. During the time between the mishap and the conversation with the surgeon, the crew members including the plaintiff were together. In any event the statement of the crew members to the witness would not be a part of the *res gestae*. It was not an involuntary exclamation but a recital of a past event made by a person other than the injured party. There is no showing that any of the crew members other than the plaintiff had been injured. The impropriety of the proffered testimony is well summarized in Johnson v. Swords Co. et al., 286 Ill App 377, 3 NE2d 705 as follows, page 706:

"The general rule is that, for declarations to be admissible in evidence as part of the *res gestae*, they must be made in connection with an act proven. The rule also is that the *res gestae* generally remains with the *locus in quo*, and does not follow the parties about after the principal act is completed. . . . Usually the interval between the statement and the exciting cause of which it is deemed a natural and, to a certain extent, an inevitable form of expression, is brief. If it has ceased to be spontaneous, it then falls back into the general class of narratives, and thus becomes improper."

We conclude that the court properly sustained the objection to the question propounded to Dr. McKibben.

Finally, plaintiff insists that the court erred in permitting Dale Bouchard, defendant's road foreman of engines, to read a speed tape to the jury. The tape purported to show that the locomotive was traveling 26 miles an hour when it came to a stop. Plaintiff testified that it was then traveling 3 to 5 miles an hour. Plaintiff thinks that the tape should not have been read to the jury because (1) it was never admitted in evidence; (2) there was no showing that it was in the same condition in the courtroom as it was when removed, nor that it had been tampered with; and (3) there was no showing that the tape recording equipment was in good working order prior to or after the occurrence. We are satisfied that the preliminary requirements for the reading of the speed tape were met. The jury heard the testimony of Mr. Bouchard, which was impressive. Neither party asked to have the tape received in evidence. Not having asked for a ruling on the proposition during the trial, plaintiff is in no position to urge error because the tape was not received in evidence.

The point presented in plaintiff's brief of misconduct by defendant's counsel to inflame and prejudice the jury against plaintiff was withdrawn by him during oral argument. The judgment is affirmed.

Judgment affirmed.

FRIEND, P. J. and BRYANT, J., concur.