Courtney L. Braswell, Plaintiff-Appellee, v. The New York, Chicago and St. Louis Railroad Company, Defendant-Appellant.

Gen. No. 63–F–6.

Fifth District.

June 3, 1965.

Pope and Driemeyer, of East St. Louis, for appellant.

Mudge & Mudge, of Edwardsville, for appellee.

EBERSPACHER, P. J.

This cause was originally before the Appellate Court for the Fourth District on an appeal from a judgment in the sum of $65,000 based on a verdict of a jury in a Federal Employers' Liability Act case instituted by Courtney L. Braswell, plaintiff, against The New York, Chicago and St. Louis Railroad Company, defendant. Courtney L. Braswell is now deceased and Dorothy Braswell, Administratrix of the Estate of Courtney L. Braswell, has been substituted as a party plaintiff.

On June 3, 1963, the Appellate Court reversed the judgment of the circuit court and entered judgment in favor of the defendant company. Braswell v. New York, C. & St. L. R. Co., 43 Ill App2d 21, 192 NE2d 592. Thereafter, a petition for rehearing was denied by the Appellate Court, and plaintiff's petition for leave to appeal to the Supreme Court of Illinois was denied. Plaintiff then filed a petition for writ of certiorari to the Supreme Court of Illinois in the Supreme Court of the United States; that Court granted the writ and reversed the judgment, Braswell v. The New York, C. & St. L. R. Co., No. 1004, 377 US 405, 84 S Ct 1628; citing Rogers v. Missouri Pacific R. Co., 352 US 505, 77 S Ct 443, 1 L Ed2d 493. The defendant then filed a motion for this Court to consider defendant's motion for a new trial which this Court had not previously considered in its original opinion. This motion was granted over plaintiff's objection and we now consider defendant's alternative motion for a new trial. We will not repeat the facts as they are fully set out in Braswell v. New York, Chicago and St. Louis R. Co., 43 Ill App2d 21, 192 NE2d 592. Suffice it to say that the facts, as they pertain to the issues now

123

before this Court, show that plaintiff limited his right to recover, to defendant's alleged negligence in permitting him to return to work and in assigning him to a job which it was contended he was physically unable to perform.

Defendant has assigned six alleged errors in support of its contention for a new trial, namely: (1) excessiveness of verdict; (2) exclusion of a letter (Defendant's Exhibit No. 2) and conversation concerning its contents from evidence; (3) admission of the opinion of an examining doctor into evidence; (4) the alleged giving of oral instructions to members of the jury; (5) improper argument and prejudicial conduct of plaintiff's counsel; and (6) refusal to give defendant's tendered instruction No. 14.

In support of its contention that the verdict was so grossly excessive as to indicate it was the result of passion and prejudice defendant cites various Illinois and Federal decisions. Plaintiff likewise cites cases from the same jurisdictions to support the contention that the verdict was not excessive. As was said in George C. Vaughan and Sons v. Dyess, 323 SW2d 261 (Tex Civ App), in which a $75,000 judgment on behalf of a 42-year-old sheet metal worker who sustained fractures of two transverse processes of the lumbar spine resulting in permanent pain and inability to do heavy work, was found not to be excessive,

> ". . . . A study and comparison of many cases present a rather amusing variety of thinking from which there can be only one conclusion. Each case must rest upon its own state of facts and then hazard the opinion of those who are called upon to evaluate the damages, including the pain and suffering. . . . Actually, the measure of damages in each case is a matter of opinion of the person or persons whose duty it becomes to fix those damages. Courts in most instances have al-

124

ways been reluctant to disturb the findings of a Court or jury on such matters where there is any evidence to support it. . . ."

At the time of plaintiff's collapse he was 55 years of age; his doctors, as well as the medical director of defendant, were of the opinion that he was then capable of employment. He became unconscious and collapsed while performing the work assigned him by his employer, was hospitalized and was found to have a marked compressed fracture of the first lumbar vertebrae and a slight compression deformity of the second lumbar vertebrae. He was in traction and hospitalized for 10 days. Despite evidence of satisfactory healing, there was undisputed evidence of pain and continued suffering, and there is no doubt that this condition, along with extensive surgery which he had undergone before he was qualified for rehiring by defendant, left him totally unable to work. Plaintiff made no claim for loss of wages or hospital and medical expenses; and no showing of life expectancy was made. Defendant offered no medical evidence, although it had x-rays of plaintiff's spine taken both before rehiring plaintiff and after his collapse.

■■■■ We need not cite authority that courts take judicial notice of the reduced purchasing power of the dollar, and that we must consider that the verdict reflects an inflationary period in our economy. The question of excessiveness is not to be determined by what we as judges think the damages should have been. Under our system of jurisprudence it is the jury, and not the reviewing Court that determines what amount will compensate a plaintiff. The assessment of damages is preeminently a jury function. Parham v. Carl W. Linder Co., 36 Ill App2d 224, 183 NE2d 744; Tomlinson v. Chapman, 24 Ill App2d 192, 164 NE 2d 240. We believe reasonable men might differ in their judgment on the amount of damages sustained

by plaintiff, and therefore cannot say that the jury was moved by passion and prejudice.

The principal contention with reference to the trial court's rulings on admission of evidence has to do with the refusal to allow the defendant's medical director, Dr. Houk, who qualified plaintiff to return to work, to testify that he had relied on the advice of Dr. Burford, the head of the Medical and Surgical Chest Service at Barnes Hospital in St. Louis, as expressed in a letter dated March 4, 1957, (Defendant's Exhibit No. 2) and later by telephone; refusal of defendant's offer to so prove; refusal to receive the letter into evidence; and refusal to permit defendant to disclose the contents of the letter to the jury.

Plaintiff had worked for the defendant company as a section gang laborer since 1947. In November of 1955, on the advice of his personal physician, he entered Barnes Hospital at St. Louis, Missouri. There it was found that he was suffering from a bronchogenic carcinoma of the right lower lobe of the right lung, and a portion of the lung was removed surgically. Thereafter, an infection developed in his chest cavity and in a series of operations which followed, he had a rib resection drainage of his right chest and a two stage thoracoplasty, or plastic repair of his chest cavity. On October 1, 1956, he was given a written release by Dr. Ferguson, one of the surgeons who had treated him, reciting that he was able to return to work. For a period of eight months, until he was permitted to return to work on June 13, 1957, plaintiff made repeated demands to the defendant company that he be returned to the job as a section hand.

Dr. E. F. Wahl, a local examining physician for the defendant company, refused to certify him for employment and plaintiff went to Cleveland, Ohio, on two different occasions, where he was examined by Dr. D. O. Darrah, assistant medical director for the

defendant company, who had refused to pass him for work. On plaintiff's second visit to Cleveland, Dr. Darrah requested that plaintiff obtain a written report from Dr. Thomas H. Burford, who was in charge of the doctors that operated upon the plaintiff at Barnes Hospital. Plaintiff then went to Dr. Burford and requested him to write a letter to Dr. Darrah, which he did on March 4, 1957. The letter written by Dr. Burford, (Defendant's Exhibit No. 2), gave a resume of the surgical operations and treatment performed on the plaintiff and the concluding part of the letter, which is the part specifically objected to by plaintiff, reads as follows: "We discharged him as cured from his empyema on September 6, 1956, and told him that he would be able to return to work on October 1, 1956. I consider him definitely employable."

This letter was received by Dr. Darrah, and soon after its receipt, it reached the office of Dr. John W. Houk, an industrial surgeon and the medical director for defendant company. Dr. Darrah was not a witness. Dr. Houk, called by defendant, testified that he had never examined plaintiff, but knew about him; that he received a letter from Dr. Burford whom he knew by professional reputation, and that his record showed that plaintiff was qualified for work on June 10, 1957. He was further permitted to testify, "It is my policy to talk with these doctors if there is any doubt in my mind. I usually call them explaining the fact that very few surgeons or attending doctors are familiar with the nature of a man's work. A man's health may be improved to the point where he wants to go to work and the doctor thinks he can, but I like to define their duties before we send a qualification out. I talked with Dr. Burford by telephone sometime after receiving his letter," and further testified, "I did have a telephone conversation with Dr. Burford. His letter

. . . indicates that a copy went to Mr. Courtney Braswell. I had the ultimate responsibility of making the determination as to whether Mr. Braswell should be reemployed. I okay'd him for return to work in June."

On objection, Dr. Houk was not permitted to testify as to what was said in his telephone conversation with Dr. Burford nor whether he relied to any extent upon the letter or telephone conversation in reaching the decision to qualify plaintiff for work. An offer of proof was then made wherein defendant offered to prove that in the telephone conversation Dr. Burford said that in his opinion plaintiff was qualified to be returned to the job where he was subsequently reemployed, and that Dr. Houk relied upon the letter, as well as the telephone conversation, in arriving at the conclusion that plaintiff was qualified to go back to work. The offer of proof was denied and a reoffer of proof, eliminating therefrom any reference to the telephone conversation was made, which was also denied. Likewise, on objection of plaintiff, the letter, defendant's Exhibit No. 2, was denied admission into evidence.

Defendant contends that plaintiff solicited Dr. Burford's letter and opinion, and used both in his efforts to persuade defendant company to rehire him, and that Dr. Burford's expressions, in both his letter and telephone conversation, in legal effect, became those of plaintiff and constituted admissions against his interest in the suit.

Wigmore on Evidence (Third Edition) Volume IV, par 1069, p 68 states:

> "Admissions, in the sense used in this chapter, are merely the prior assertions of the party, which being inconsistent with his present claim, serve now to discredit it by their discrepancy (ante, par 1048). How then can the utterances of any other person than the party himself serve for that

128

purpose? In other words, how do other person's statements become receivable as vicarious admissions?

"Three different modes suggest themselves as possible:

"(1) By preappointment, or reference (par 1070) the party may designate a person whose utterance he assents to beforehand as correct, and this utterance, when made, thus represents the party's own belief."

Again in par 1070, p 69, it is said:

"Admissions by reference to a third person. If a party instead of expressing his belief in his own words, names another person as one whose expected utterances he approves before hand, this amounts to an anticipatory adoption of that person's statement; and it becomes, when made, the party's own."

██ In Callaghan's Illinois Evidence, Volume 5, Sec 10.72, it is stated:

"Where one expressly refers another to a third person for information concerning a disputed or uncertain matter, as being authorized to speak or act for him, he is generally bound on the theory of agency, by the statements or acts of the person so referred to, and evidence of such statements or acts is admissible against him not as hearsay but as original evidence. But it has been decided that the foregoing rule should not be extended beyond the ordinary rule as to an agent given authority to bind a principal, and that it should clearly appear that the person referred to had authority to speak for the principal, who intended to be bound by the result."

129

Numerous Illinois cases support the rule as above stated. Rodenkirk v. State Farm Mut. Auto Ins. Co., 325 Ill App 421 at 438, 60 NE2d 269; Bartoletti v. Hoerner, 154 Ill App 336 at 342; Modern Woodmen of America v. Davis, 184 Ill 236, 56 NE 300; Select Lake City Th. Op. Co. v. Central Nat. Bank; in Chicago, 277 F2d 814 (7th Circuit 1960); Charles D. Stone & Co. v. New York Cent. R. Co., 214 Ill App 483.

The wife of the plaintiff testified that she was present, about the first week of March 1957, when plaintiff requested Dr. Burford to write a letter to Dr. Darrah with respect to his ability to return to work; also that she was present when plaintiff discussed with one of the doctors at Burford's Clinic, that he wanted to go back to work and hadn't been put back, and that she did not see the letter that went to Cleveland, but a copy came to their house. Plaintiff on cross-examination, referring to the release to go back to work from Dr. Ferguson, who had performed surgery on plaintiff, said, "He said that he figured I was employable. I believe that specifies on your paper there with Mr. Burford, too" (Referring to the letter of March 4, 1957 written by Dr. Burford). Referring to Dr. Burford's letter, he also stated, "Mr. Mudge has a copy of the letter to which I just made reference. Whether I get that letter from him and look at it and tell you when my doctors released me to go back to work is up to Mr. Mudge." Plaintiff further testified, "The second trip to Cleveland was when Dr. Darrah told me he wanted a letter personally from Burford. I got the letter and that's it right there. I took a copy of that letter with me when I went back again to see Dr. Darrah."

Undisputed evidence showed that the plaintiff, after being released on October 1, 1956 by his physicians, made repeated efforts to be put back to work; that he obtained the letter from Dr. Burford for the express

purpose of helping him to be reemployed; that he received a carbon copy of the letter, knew its contents and took it to Cleveland with him on his third trip; that he discussed the contents of the letter with Dr. Darrah; and that he, at that time, did not disaffirm the letter, and in fact adopted the contents of the letter.

We, therefore, conclude that the letter came under the exception to the hearsay rule, and that it should have been admitted as evidence.

There is no showing that plaintiff consented to or had any knowledge as to the telephone conversation between Dr. Burford and Dr. Houk and it was properly excluded.

In his closing argument, the counsel for defendant said, "Now I don't think this railroad company that I represent was negligent. Mr. Mudge says this man had to go to work, he had a wife and two small children. I can understand that. And I think some of the people on the R. R. Company could understand that. But fortified as they were with the opinions that they had from the men who knew more about Mr. Braswell's condition than they, they did put him back to work." Counsel for plaintiff in his closing remarks said, "I think that you people would be less than intelligent if you didn't gather from the conclusions from what Mr. Broderick said that this letter from Burford in some way expressed approval in some way of Mr. Braswell going back to work. That is clearly what he intends for you to believe. I see no reason to hem and haw around about it."

The substance of the letter from Dr. Burford had been brought before the jury by both counsel in their questioning of the witnesses. The jury was also advised that plaintiff's doctors had released him for work and the defendant company had knowledge of that fact. It is to be noted that Dr. Burford's letter

131

did not say that plaintiff was employable as a section hand; only that he was definitely employable. Dr. Burford had never examined or treated plaintiff personally. Therefore, his statement that plaintiff was definitely employable was not made from his own personal knowledge but from hospital records that were available to him as the head of the aforesaid department. Since the letter was in the nature of an admission by plaintiff it would be admissable in evidence even though the admission was made without the personal knowledge of Dr. Burford. However, the lack of knowledge of the subject matter of the admission affects the weight of such evidence. Casey v. Burns, 7 Ill App2d 316, 129 NE2d 440; Susemiehl v. Red River Lumber Company, 306 Ill App 430, 28 NE 2d 743. We agree with the quotation approved in the Susemiehl case:

> "An admission is the statement of fact against the interest of a party making it—but it is not essential to constitute it an admission, that the fact should have come under the personal observation of the declarant. *Undoubtedly admissions of the latter kind are much stronger than where the declaration is of a fact, of which the party could have no personal knowledge.*" (Italics supplied.)

In the light of the testimony that his surgeon Dr. Ferguson had released him for work, his own opinion that he was able to go back to work, and his repeated efforts and examinations to be qualified to go back to work, we fail to see that the letter itself would have contributed anything that was not presented to the jury, nor how it could have had any additional diminishing effect. The exclusion of evidence is harmless where the evidence excluded was fully established by other evidence and also where the evidence offered was merely cumulative. ILP, Appeal and Error, Sec

132

825; Feeley v. McAuliffe, 335 Ill App 99, 80 NE2d 373; Thompson v. Chicago & Eastern Illinois R. Co., 32 Ill App2d 397, 178 NE2d 151; Louis v. Youngren, 12 Ill App2d·198, 138 NE2d 696. The jury was properly instructed with reference to the manner of determining damages.[1] Under the circumstances of this case, we therefore conclude that refusal of the offer of proof, and denial of defendant's Exhibit No. 2 into evidence, were not reversible error.

■ Dr. Richard L. Gross, after being qualified as an expert witness, testified that at the request of the Federal Social Security Agency, he examined plaintiff· in 1959 to determine if plaintiff qualified as disabled. He had never treated plaintiff. He took a history from plaintiff and made a complete physical examination, taking x-rays of his spine and chest, an electrocardiogram, and tested his lung capacity. His opinion was that plaintiff was disabled. On cross examination he stated that he depended in part, in arriving at his conclusion, on the history which plaintiff had given him. Defendant moved to strike his testimony on the theory that it was inadmissable because his opinion was based in part on the history plaintiff had given him. Numerous cases are cited as supporting the rule that an opinion based in part on history or subjective complaints is inadmissable. In Bowman

---

[1] Plaintiff's instruction No. 7, given without objection was: "If you find that plaintiff's injury was proximately caused by a combination of plaintiff's contributory negligence and negligence on the part of the defendant, then in assessing the damages you should proceed in the following manner: First, determine the amount of the plaintiff's damages without reference· to the question of contributory negligence. Second, decide what proportion or percentage of the total combined negligence of both parties causing the injury consisted of the plaintiff's negligence. Finally, reduce by this proportion or percentage the amount of damages you would have awarded had the plaintiff's negligence not contributed to the injury."

v. Illinois Central R. R. Co., 11 Ill2d 186 at page 214, 142 NE2d 104, the Court said:

> "The Appellate Court also stated that reversible error was committed by the trial court in allowing plaintiff's witness, Dr. Berdach, to testify on the basis of subjective symptoms. The criterion as to whether a doctor may testify to subjective symptoms is whether the examination is made for the purpose of trial or for treatment, Shell Oil Co. v. Industrial Com., 2 Ill2d 590; Cuneo Press Co. v. Industrial Com., 341 Ill 569, 572, and since the record shows that the examination was part of the routine diagnostic procedure followed by the Jacksonville State Hospital preparatory to treatment, even though Bowman left the hospital at that time before treatment could be administered, the testimony of the doctor was properly admitted by the trial court."

In this case the testimony showed that Dr. Gross conducted a thorough examination, and did not examine plaintiff for the purpose of testifying in this case. Furthermore, Dr. Gross was the representative of an agency against which plaintiff had made a claim, and an adversary type of situation existed. Under such circumstances the trial court did not err in denying the motion to strike the testimony.

Defendant also contends that the trial court instructed one or more members of the jury outside of the presence of defendant and without defendant's consent. It appears from the record that at the close of the taking of all evidence and after the court had adjourned, two jurors came to the Judge's chamber. One juror inquired if she could be excused for the following day and was advised she would have to return as she had been a member of the panel that heard all

of the evidence. The other juror tried to ask a question of the judge but as he states in the record, he would not allow her to ask the question on her mind and advised her not to talk to anyone or make any telephone calls concerning the case. It appears from the record that the trial court acted properly under the circumstances and no error was committed.

██ Defendant's contention of improper argument is based principally on comments concerning the absence of the testimony of Dr. D. O. Darrah, defendant's assistant medical director, who had on three occasions examined plaintiff, but refused to qualify him for reemployment, and who had suggested to plaintiff that a letter from Dr. Burford might be helpful. Dr. Darrah, due to a serious coronary condition which prevented him from traveling, and which had resulted in his working on a restricted schedule, was not present at the trial. Defendant's counsel, in his argument to the jury, called attention to Dr. Darrah's absence, advising of his coronary attacks, and counsel's regret at his absence and the jury not being able to see and hear him. Dr. Houk had testified that, due to his physical condition, Dr. Darrah was on restricted hours. Plaintiff's counsel's reference in his closing argument to Dr. Darrah's high standing in the hierarchy of the railroad and his being permitted to work on a restricted schedule, as compared to the care afforded plaintiff, was objected to and the objection sustained. While those remarks, as well as other comments of counsel pointed out, were improper, the jury was properly instructed, and we do not find that the conduct of counsel was such that a new trial is necessary.

██ ██ On objection by plaintiff the Court refused to give defendant's instruction number 14, which was as follows:

"The Court instructs the jury that plaintiff's suit is brought under the provisions of the Federal Employers' Liability Act. This Act does not make the railroad an insurer of the safety of its employees while they are on duty. The basis of the railroad's liability is its negligence and not the fact that injuries occur to its employees, and such negligence must be in whole or in part the cause of such injuries."

While the instruction was a proper statement of the law as it has frequently been pronounced by Federal Courts, we find, and are cited no case in which this instruction was given. Whether defendant was an insurer of plaintiff's safety was not the issue, and the jury was adequately advised by instructions and both of counsel's arguments as to the theory of the case, the liability and measure of damages, if any. The trial court properly refused the tendered instruction.

We therefore conclude that the trial court properly denied the motion for a new trial and affirm the judgment of the circuit court of Madison County.

Judgment affirmed.

MORAN and GOLDENHERSH, JJ., concur.