Howard E. Waters, Plaintiff-Appellant, v. Chicago & Eastern Illinois Railroad Company, a Railroad Corporation, Defendant-Appellee.

Gen. No. 66–90.

Fifth District.

August 7, 1967.

Kassly, Weihl, Carr & Bone, of East St. Louis (Rex Carr, of counsel), for appellant.

Walker & Williams, of East St. Louis (Edward G. Maag, of counsel), for appellee.

EBERSPACHER, J.

Plaintiff, Howard Waters, filed his complaint in two counts, under the Federal Employers' Liability Act [1] against the defendant, Chicago & Eastern Illinois Railroad Company, for damages on account of alleged injuries sustained on July 25 and August 22, 1964, when he was employed by Simpson Express & Trucking Company, (hereinafter referred to as Simpson), as a ramp man at the "piggy-back" loading ramp of the defendant railroad in Madison County, Illinois. Contending that his duties as an employee of the railroad were in furtherance of interstate commerce, plaintiff charged negligence of the railroad resulting in his injuries.

The defendant railroad denied that plaintiff was an employee and denied it was guilty of negligence, denied jurisdiction of the court under F. E. L. A. and denied the nature and extent of injuries, and averred that the negligence of the plaintiff caused or contributed to his injuries.

At the close of all the evidence defendant moved for a directed verdict, contended that the evidence was insufficient to show that plaintiff was an employee of defendant, and insufficient to establish liability under F.E.L.A., on which motion the court reserved its ruling. The cause was submitted to the jury and it returned a verdict against the plaintiff on both counts, on which judgment was entered. The court denied plaintiff's post-trial motion for a new trial, and also denied defendant's post-trial motion, which renewed its motion for a directed verdict made at the close of all the evidence.

Plaintiff here contends that the verdict of the jury was contrary to the law, which contrary verdict was caused by the refusal of the court to instruct the jury relative to section 5 of the Act.[2] By its cross appeal, defendant con-

---

[1] 45 USC Annotated, §§ 51 to 59, hereinafter referred to as F. E. L. A.

[2] 45 USC Annotated, § 55, the pertinent part of which is "Any contract, rule, regulation, or device whatsoever, the purpose or

50

tends the court erred in not directing a verdict for defendant at the close of all the evidence.

In the early 1950's, "piggy-back" service was begun by the railroad to meet the competition of other rail carriers who had instituted such service. "Piggy-back" service is a system whereby over-the-road trailers, which are customarily pulled over the highways by tractor-trailer trucks, are loaded by customers at their place of business and carried from there by a truck to a railroad yard, where they are pulled onto railroad flat cars, called TTX cars. There the trailer is disengaged from the tractor and is tied to a stanchion, which holds the trailer securely on the railroad car. The railroad cars are then pulled by rail to a railhead near the consignee's destination, where they are removed from the flat cars by a trucking or drayage company and delivered over the highways and streets to the consignee by the trucker.

The C. & E. I. Railroad has had, since the institution of "piggy-back" service in the early 1950's, five ramps: one in Chicago, one in Dalton, Illinois, one in Madison-St. Clair County, Illinois area, one at Terre Haute, Indiana, and one at Evansville, Indiana. The ramps are merely an inclined plane, made of cinders and ties, which will permit a tractor-trailer motor vehicle to be driven up on a railroad flat car backed against the ramp. The ramps, yard and parking lots are maintained by the railroad.

At the time the "piggy-back" service was instituted, and at all times since then, the C. & E. I. has not had tractors, drivers, tools, machinery and equipment to pull and handle these over-the-road trailers. Between the early 1950's and 1960 the C. & E. I. Railroad entered into contracts with local trucking firms to furnish the motor vehicles, drivers and equipment to haul the trailers onto and off of the flat cars. In early 1960, the local hauling

intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void . . . ."

and drayage company which had the contract with the
C. & E. I. for the truck hauling and "piggy-back" work
in the St. Louis Metropolitan area, had proved unsatis-
factory to the C. & E. I. and the contract for this truck-
ing work was open for bids. Among the bidders was Simp-
son whose bid was accepted and a contract was entered
into, on April 1, 1960, for the "piggy-back" work at the
C. & E. I. ramp at Mitchell, Illinois, between Simpson and
the railroad.

Simpson is a local hauling and drayage firm which,
since its acquisition by the present owner, in 1950, has
been operated as a trucker doing contract cartage work,
and had done "piggy-back" work under contract with
other railroads prior to 1960. There have never been any
officers of the C. & E. I. who were shareholders, officers
or directors of Simpson.

After the C. & E. I. awarded the contract to Simpson
for this "piggy-back" drayage work, Simpson sent trac-
tors and men and equipment to the C. & E. I. ramp at
Mitchell, Illinois, and these men and equipment performed
the loading, unloading and delivery operations incident
to the "piggy-back" work to and from the Mitchell ramp.
As a part of the contract, Simpson leased an old boxcar,
which was on poles, to use as office space for the Simp-
son dispatchers and employees and refurnished and refur-
bished it as an office at their own expense, for which
the C. & E. I. was not billed or charged, and the railroad
furnished all the electricity and heat for this office. In it
were telephones hooked up directly to the C. & E. I. office
in Chicago and to three other C. & E. I. locations. These
were used for communication with other ramps of the
railroad in order to ascertain how many trailers would be
coming the following day so that Simpson could have the
necessary men and equipment available and at the same
time advise the ramps in Chicago and Terre Haute of
trailers being loaded at Mitchell, for arrival the following

day at those ramps. The work at the railroad's ramps was coordinated and controlled through a central office of the railroad in Chicago.

Plaintiff introduced into evidence the contract between C. & E. I. and Simpson, which was in effect at the time of the injuries of plaintiff. It designated Simpson as an independent contractor, and provided that persons performing the services contracted for, were to remain the sole employees of Simpson subject to Simpson's control and direction and not the employees or subject to the direction and control of the railroad. It provided that Simpson's liability for freight handled while in the possession of Simpson should be that of an insurer until such time as it was delivered either to the railroad or the consignee. It further provided that "for such transporting and delivery of freight, or loading or unloading of trailers from flat cars, and for services incidental thereto" Simpson was to be paid rates to be agreed upon from time to time, based upon exchange of letter agreements. The rates Simpson charged the railroad were on an hourly basis sufficient to pay the employees for their time, the fringes for pension, health and welfare, operating and maintenance cost of the Simpson equipment and a profit for Simpson; and fluctuated in accordance with Simpson's costs.

Plaintiff submitted testimony that part of the work done by him at the C. & E. I. ramp was not included in the contract between Simpson and the railroad and was customarily done by railroad employees on ramps of other railroads; as well as evidence that the lifting of bridge plates (heavy metal plates attached to cars to bridge the gap between cars to move trailers from one car to the next, and also attached to the wooden ramp to bridge the gap between the ramp and cars) was railroad work rather than the work of the Simpson ramp crew of which he was foreman or lead man. He also offered evidence that in actual practice he was supervised, directed and

controlled in his work at the ramp by railroad employees. He offered proof of his injury while lifting a jammed bridge plate on July 25 and an injury as a result of stepping off a TTX car onto a block of wood which turned over with him on August 22, and that such blocks were used by the railroad switching crew, and left lying around the yards by railroad employees. He contends the negligence of the railroad in jamming and bending the bridge plate, and the scattering of wooden blocks on the ramp, was the cause of his permanent injury.

The railroad offered evidence that all the work done by plaintiff was incidental to the performance of the Simpson Contract, that he was not directed or controlled by the railroad, and that the communications and directions given him by the railroad were given to coordinate the railroad and ramp activities which his employer Simpson had contracted to perform; that some railroads do the ramp work with their own employees while others contract that work to be done. They also offered evidence that plaintiff had bid in the lead man's job at their ramp through his seniority in the Teamsters' Union at Simpson, by whom he had been employed since 1955; that while employed by Simpson at the C. & E. I. ramp he also performed services for Simpson on other jobs and that Simpson had cartage contracts with other firms and did some ramp work at other railroads which were billed by Simpson for plaintiff's time. The railroad also offered evidence tending to impeach plaintiff's occurrence witnesses, particularly as to the manner in which he sustained his injuries, and that the wooden blocks of the type which caused plaintiff's injury, were used and scattered by the ramp men in their work.

Both the issue of negligence and the question of whether the relationship of employer and employee existed between the defendant and plaintiff were contested; both were presented to the jury for determination. Plaintiff

offered, and the court gave both his instruction #7, IPI
160.02, concerning the F. E. L. A. rule of liability and
the issue of contributory negligence, his instruction #9,
IPI 160.09, the F. E. L. A., no assumption of risk instruc-
tion, as well as his instruction #10, which is not an IPI
instruction, which was:

> "You are instructed that in determining whether
> or not the plaintiff was an employee of the Chicago
> & Eastern Railroad at the time of the occurrences in
> question you should consider all of the evidence in-
> troduced relating to whose work was being performed
> at the times in question, and as to who had the power
> of control over the work and the plaintiff."

At plaintiff's request, the court also gave his #11 (160.08
modified) which was:

> "If you find that the plaintiff was an employee of
> the defendant railroad, then it was the duty of the
> railroad to use ordinary care to provide the plaintiff
> with a reasonably safe place in which to do his work."

In the trial court, plaintiff treated and present-
ed the question of whether plaintiff was an employee of
the defendant railroad, taking into account whether rail-
road work was being performed by plaintiff, as a question
of fact for the jury. We must presume that the verdict
of the jury was based upon a consideration of all matters
in controversy presented at the trial, including both de-
fendant's negligence and the employment relationship of
plaintiff and defendant. The general verdict is considered
to be as broad as the issues upon which the jury was re-
quired to find. Wenihous v. Woodruff, 324 Ill App 660, 59
NE2d 523; Huehl v. Monarch Refrigerating Co., 157 Ill
App 145. The jury found the issues presented in favor of
the defendant and there is evidence in the record to sup-
port such finding. Under F. E. L. A., we are limited to

ascertaining whether there is any evidentiary basis for the verdict and when such evidentiary basis appears our function in reviewing the record is exhausted, Bowman v. Illinois Cent. R. Co., 11 Ill2d 186, 142 NE2d 104; Hack v. New York, C. & St. L. R. Co., 27 Ill App2d 206, 169 NE2d 372; Lavender v. Kurn, 327 US 645, 66 S Ct 740, 90 L Ed 916, and such rule is applicable to verdicts against the plaintiff, as well as for the plaintiff. Thompson v. Chicago & Eastern Illinois R. Co., 32 Ill App2d 397, 178 NE2d 151; Cafasso v. Pennsylvania R. Co., 169 F2d 451.

█ The theory upon which a case is tried in the lower court cannot be changed on review. In re Estate of Leichtenberg, 7 Ill2d 545, 131 NE2d 487; Benson v. Isaacs, 22 Ill2d 606, 172 NE2d 209. Although plaintiff proceeded in the trial court on the theory that his employment by defendant, based on his doing railroad work, was a question of fact, he here argues that "determination of plaintiff's status is a legal determination, not factual" contending that the legal significance of the facts is in dispute and that the jury erroneously determined plaintiff's status due to the fact that they were not instructed as plaintiff requested them to be, in the language of section 5 of the Act. He contends that the court erred in refusing his instruction #8, not in IPI, which was:

"At the time of the occurrence there was in force a Federal Statute which provided that any contract, rule, regulation or device, whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by the Federal Employers' Liability Act, shall to that extent be void."

and after it was refused, the court erred in refusing his instruction #18, not in IPI, which was:

"At the time of the occurrence there was in force a Federal Statute which provided that any contract, rule, regulation or device, whatsoever, the purpose or intent of which shall be to enable any common carrier to except itself from any liability created by the Federal Employers' Liability Act, shall to that extent be void. Whether or not such was the intent or purpose of the contract in question in this case is for you to decide."

The only evidence of defendant's intentions in negotiating the contract with Simpson was offered by the railroad; its witness testified that, to do its own "piggy-back" work with the day to day variance of the quantity of the work would be economically unsound.[3]

Plaintiff has cited, Downs v. Baltimore & O. R. Co., 345 Ill App 118, 108 NE2d 537; Cimorelli v. New York Cent. R. Co., 148 F2d 575; Pennsylvania R. Co. v. Roth, 163 F2d 161; and Pennsylvania R. Co. v. Barlion, 172 F2d 710; in each the question of the status of the employee was determined as a question of law. In Downs, the railroad offered no evidence but rested on its motion for a directed verdict at the close of plaintiff's evidence; by reason of this the questions of whether or not plaintiff was an employee of an independent contractor and whether or not plaintiff was engaged in interstate commerce, were treated by the trial court as questions of law. (See 345 Ill App 118 at page 121.) In that case the court also said, at page 130, "The question here involved being a factual one, analogous cases are not persuasive and in

[3] The evidence demonstrates that there is no established custom or practice in the railroad industry as to whether "piggy-back" work is done by the railroads through their employees and their own equipment or through contracts with independent truck lines; both practices exist in the industry in the St. Louis metropolitan area.

57

many cases not helpful." In the Cimorelli case, the parties, by stipulation, submitted the question whether under the contracts the injured employee was an employee of the railroad as a matter of law; the court found he was not and that the contract did not violate section 5 of the Act, and dismissed the employee's petition; the reviewing court, stating that each case must be decided on its particular facts and ordinarily no one feature of the relationship is determinative, concluded from the contract that the petitioner's nominal employer was not an independent contractor, reversed and remanded, declining to determine whether the railroad's contract was in violation of section 5 of the Act. In the Roth case, the trial court instructed the jury as a matter of law that Roth was in the employ of the railroad, after it had denied the railroad's motion for a directed verdict, determining that the ruling in Cimorelli was applicable. In Barlion, the reviewing court affirmed the district court which held that the employee was as a matter of law an employee of the railroad, and that his nominal employee was not an independent contractor citing Cimorelli and Roth. (In Roth and Barlion the contracts were identical.)

We are compelled to note that, consistent with plaintiff's theory below that the employment status of plaintiff was a question of fact for the jury; he did not request the determination of his status as a matter of law or request the court to instruct the jury that he was an employee of the railroad. None of the cases cited by plaintiff are authority for the giving of an instruction in the language of section 5 of the Act.

Plaintiff has cited Brant v. Chicago & A. R. Co., 294 Ill 606, 128 NE 732, in which it was held that there was no impropriety in the giving of an instruction which in substance "directed the jury that public policy does not permit an employer, by contract or written application, to relieve itself from liability for injuries occasioned by

its negligence." In Ward v. Atlantic Coast Line R. Co., 265 F2d 75, the court said at page 85:

> "It should be obvious at the outset that the statutory provision against devices to avoid the employer's liability cannot be used to prove the existence of the legal situation—the employer-employee relationship—which calls into play both the statute creating this liability and the provision thereof which forbids any devices intended to avoid such liability."

There the "statutory provision" referred to was section 5 of F. E. L. A. In Turpin v. Chicago, B. & Q. Ry. Co. (Mo), 403 SW2d 233 (1966), the Missouri Supreme Court pointed out that the "device" argument could not in any event be used to create employment under F. E. L. A., and pointed out that courts should be alert, to avoid intercompany arrangements drawn to avoid federal jurisdiction under F. E. L. A., as well as to avoid the extension of the Act to cover those engaged in other occupations. The court pointed out that under the most recent federal decisions, no jury issue exists if reasonable minds cannot differ on the effect of the evidence and its inferences. The lower court's judgment for the railroad rendered on a post-trial motion after the jury had returned a verdict for the employee, was affirmed; the U. S. Supreme Court denied certiorari, 348 US 1003, 86 S Ct 1925, 16 L Ed2d 1015.

The railroad in support of its cross appeal has cited Fawcett v. Missouri Pac. R. Co., 374 F2d 233, affirming 242 F Supp 675, cert den 382 US 907, and Turpin v. Chicago, B. & Q. Ry. Co., supra, contending that under those holdings, employees of independent contractors doing "piggy-back" work for railroads are not employees of the railroad within the meaning of the Act. These are the only cases we find reported dealing specially with injuries sustained by employees of a nominal employer who

59

had contracted to furnish "piggy-back" service for a railroad. While summary judgment for the railroad was affirmed in Fawcett, and judgment for the railroad entered on a post-trial motion was affirmed in Turpin, we do not consider the opinions as supporting so general a statement. We believe the applicable law to the case at hand is found in the pronouncement of the U. S. Supreme Court in Baker v. Texas & Pac. Ry. Co., 79 S Ct 664 at page 665:

> "It has been well said of the question that 'each case must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative.' Cimorelli v. New York Central R. Co., 6 Cir, 148 F2d 575, 577. Although we find no decision of this Court that has discussed the matter, we think it perfectly plain that the question, like that of fault or of causation under the Act, contains factual elements such as to make it one for the jury under appropriate instructions as to the various relevant factors under law. See Restatement, Agency 2d, § 220, comment c; § 227, comment a. Only if reasonable men could not reach differing conclusions on the issue may the question be taken from the jury."

As a result of the foregoing, we are of the opinion that the trial court properly denied the post-trial motions of both parties and affirm the judgment.

Judgment affirmed.

MORAN and GOLDENHERSH, JJ., concur.