522 A.2d 1197

Gary L. Horner, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Larry F. Miller, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Patrick J. Smyth, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Frank J. Monaco, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Gregory Sutor, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs January 6, 1987, to President Judge CRUMLISH, JR., Judge DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*J. Allen Roth,* for petitioners.

*Jonathan Zorach,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, March 24, 1987:

Gary L. Horner, Larry F. Miller, Frank T. Monaco, Patrick J. Smyth and Gregory Sutor (Claimants) were discharged by their employer, the United Parcel Service (Employer), for falsifying their time records and

taking extended breaks. Claimants separately applied for unemployment compensation benefits, and the Office of Employment Security denied each of them benefits on the ground that their discharges were due to willful misconduct. Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

Claimants' joint appeal was heard in a series of hearings before a referee. The great bulk of the testimony at the hearings had to do with tachograph charts, which Employer asserts show the times that Claimants' trucks were not in operation, *i.e.,* Claimants' break-times. The testimony explained that a tachograph is a mechanism which is attached to all of Employer's trucks. Once a driver is ready to depart, he sets the correct time on the tachograph and starts a mechanism that begins to turn a circular chart. The chart turns constantly as a pen draws a line that shows the speed at which the truck is driven. When the truck is stationary the pen continues to mark the chart as it turns, timing the period during which the truck is immobile.

Employer also produced two witnesses who conducted an area audit or surveillance of Claimants Miller, Horner and Smyth. The witnesses testified that they watched these Claimants, timed their breaks, and that these Claimants extended their break-times beyond the one-hour-and-fifteen-minutes permitted by their contract, and that they did not accurately report their break-times in their logs or time sheets.

The referee affirmed the decision of the OES, finding each of the Claimants ineligible for benefits.[1] On

---

[1] The referee also affirmed the OES' determination that Patrick J. Smyth was ineligible for benefits under Section 401(c) and 4(w)(1) of the Law, 43 P.S. §§801(c), 753(w)(1). Claimant Smyth raises no issues with regard to these sections in his brief or in oral

appeal, the Board affirmed the referee's decision. The Claimants' cases have been consolidated for appeal to this Court.

The issue raised here on appeal is whether substantial evidence supports the referee's necessary findings of fact.[2] Claimants contend that the referee erred in admitting the tachograph charts to show that they had taken longer breaks than they were permitted under their contract with the Employer and to prove that they had falsified their logs. We agree that the tachograph charts were inadmissible.

The record discloses that the referee admitted the tachograph charts into evidence over the Claimants' timely objection of improper foundation. The referee found that the charts were admissible under the Uniform Business Records as Evidence Act (Business Records Act), 42 Pa. C. S. §6108(b), which provides:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other *qualified witness* testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission. (Emphasis added.)

While business records are admissible if they qualify under the Business Records Act, the Business Records Act does not make competent such matters contained in

___

argument in our Court. As stated in Pa. R. A.P. 2116, "ordinarily no point will be considered which is not set forth in the statement of question or suggested thereby." Therefore, we will address only the 402(e) issue raised by Claimant Smyth.

[2] *See* Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

the records that are otherwise violative of evidentiary rules. *Henderson v. Zubick,* 390 Pa. 521, 136 A.2d 124 (1957); *Broadbent v. A. Moe & Co.,* 208 Pa. Superior Ct. 28, 220 A.2d 340 (1966). Therefore, we must determine whether Employer laid an adequate foundation to make the tachograph charts admissible.

Generally, the proponent of "scientific" evidence must show that the evidence proffered has general scientific acceptance and that the particular device producing the evidence is accurate. *See* 2 *Wigmore on Evidence,* §665a, at 450 (Chadbourn rev. ed. 1970); J. Richardson, *Modern Scientific Evidence,* §9.2, (1974). The first element is not contested here. The question is only whether the tachographs in each of Claimants' trucks were accurately recording the passage of time.

No court of this Commonwealth has heretofore considered the question of whether the foundation required for the introduction of tachographic evidence must include a showing of the accuracy of the particular tachograph that made the chart. The clear weight of authority, however, is that evidence of such accuracy is essential. *Villegas v. Bryson,* 16 Ariz. App. 456, 458, 494 P.2d 61, 63 (1972); *Bell v. Kroger Co.,* 230 Ark. 384, 386-87, 323 S.W.2d 424, 426 (1959); *Great Coastal Express, Inc. v. Schruefer,* 34 Md. App. 706, 714-16, 369 A.2d 118, 124-25 *petition denied,* 280 Md. 730 (1977); *Thompson v. Chicago & Eastern Illinois Railroad,* 32 Ill. App. 2d 397, 405, 178 N.E.2d 151, 155 (1961); 3 S. Gard, *Jones on Evidence,* §15.16, at 46; *McCormick on Evidence,* §210, at 516 (E. Cleary ed. 1972); Conrad, *The Tachograph as Evidence of Speed,* 8 Wayne L. Rev. 287, 288-91 (1962); *contra Hall v. Dexter Gas Co.,* 277 Ala. 360, 365, 170 So. 2d 796, 800-01 (1964); *People v. Dusing,* 5 N.Y.2d 126, 128, 155 N.E.2d 393, 394, 181 N.Y.S.2d 493, 495 (1959); *NLRB v. Pacific Intermountain Express Co.,* 228 F.2d 170, 172 (8th Cir. 1955); 2

*Wigmore on Evidence,* §665a, at 917 (Chadbourn rev. ed. 1970).

We agree with the majority of courts that accuracy is a necessary element in laying a foundation for the admissibility of tachographic evidence.[3] Tachographs, and particularly the accuracy of their clocks, are not so within the common knowledge of the layman so as to dispense with the need for expert testimony. *See Reardon v. Meehan,* 424 Pa. 460, 227 A.2d 667 (1967); *Kundrat v. State Dental Council* & *Examining Board,* 67 Pa. Commonwealth Ct. 341, 447 A.2d 355 (1982).

All parties to this case cite *Adkins v. Dirickson,* 523 F. Supp. 1281 (E.D. Pa. 1981). This is the only case ostensibly applying Pennsylvania law which has addressed the issue of whether tachographs require a foundation before being admissible. In *Adkins,* a truck driver objected to the use of tachographic evidence of the speed he was travelling before he became involved in an accident. While the court held that accuracy was *not* part of the foundation necessary to introduce tachographic evidence, it also held that in any event the admission of such evidence was harmless error in that case because it corroborated independent evidence of speed from two other sources. *Id.* at 1283-88. We find the reasoning of *Adkins* unpersuasive and decline to adopt it. Thus, we hold that accuracy is a necessary element in laying a foundation for the admissibility of tachographic evidence.

Having decided that a foundation is required for the admission of tachographic evidence, we turn to the record to determine whether an adequate foundation was

---

[3] We note that here Claimants have allegedly extended their break-times for as little as sixteen minutes beyond the time permitted. Proof of the accuracy of the timing mechanism in the tachograph is essential, especially when dealing with such a small time differential.

laid in this case. Employer had Mr. Barber, its automotive manager, testify about tachographs. He was allowed to testify over Claimants' timely objection that he was not qualified as an expert witness. We agree that Barber was not an expert with regard to tachographs. In trying to qualify as an expert witness, Barber stated that he was given a one-day course on tachographs approximately ten to fifteen years ago, and that due to a contractual agreement with the union, he had not been permitted to work on tachographs for the past ten years. When asked a hypothetical question regarding the accuracy of the timing mechanism or clock in the tachograph, he candidly stated: "I don't have the expertise in clock repairing to tell you it will do this or won't do that." [N.T. 483]

Even if Employer had satisfied the accuracy requirement, the tachograph charts would still be inadmissible because the charts are not self-explanatory and no expert was produced to decipher them. *See, Nichol v. Unemployment Compensation Board of Review,* 82 Pa. Commonwealth Ct. 234, 241 n. 6, 475 A.2d 906, 909 n. 6 (1984). While Mr. Molovich, feeder manager for Employer, testified that he analyzed Claimants' charts and he interpreted the charts for the referee, Molovich was not qualified as an expert witness for that purpose, and he testified over Claimants' objection to his qualification as an expert witness. Indeed, he testified that he was not certified to read the charts, but merely that he sometimes analyzed charts for Employer and that he knew what he could derive from them [N.T. 14]. While work experience may qualify an individual as an expert witness, a bald statement that an individual has had some work experience, absent a showing of his qualifications, is insufficient to qualify him as an expert witness. *See Reardon.* An expert must possess sufficient skill, knowledge, or experience in that field so that his

opinion would most likely aid the trier of fact in the search for truth. *Bessemer Stores, Inc. v. Reed Shaw Stenhouse, Inc.,* 344 Pa. Superior Ct. 218, 496 A.2d 972 (1985).

We further note that there is some testimony to the effect that the charts were sometimes sent to Texas for analysis. No one, however, was able to say whether the charts in question here had been sent to Texas for analysis. We also take note that Employer's record keeping was somewhat careless in that a document purporting to be the record of a preventative maintenance inspection of Claimant Sutor's truck and tachograph was in fact that of Claimant Monaco's, and was mislabeled [N.T. 434].

Having determined that the tachographic evidence in this case is inadmissible, we turn now to the cases of the individual Claimants. We find that in the cases of Miller, Horner and Smyth, the referee relied on the testimony of the two eyewitnesses who conducted the area audit. Their testimony supports the referee's findings and conclusion that these Claimants had extended their break-times and did not accurately report their break-times on their logs. Therefore, we affirm the referee's conclusion that these Claimants were discharged as the result of their willful misconduct.

In the cases of Monaco and Sutor, however, there were no findings, other than those regarding the tachograph charts, which would support the referee's conclusion that they had extended their break-times or that they had not logged their break-times accurately. There was some testimony, however, that each of these Claimants admitted to extending his break-times at least once, but no factual findings in this regard were made by the referee. Therefore, we remand their cases to the Board for a determination of whether the remaining admissible evidence supports the conclusion that

Claimants Monaco and Sutor extended their break-times or did not accurately log their break-times.

ORDER

NOW, March 24, 1987, the decisions of the Unemployment Compensation Board of Review, Nos. B-242206, B-242207 and B-242208 dated August 1, 1985, are hereby affirmed. The decisions of the Unemployment Compensation Board of Review, Nos. B-242205 and B-242209 dated August 1, 1985, are hereby vacated and the record remanded for a determination of whether Claimants Monaco and Sutor extended their break-times and falsified their time logs.

Jurisdiction relinquished.