ILLINOIS STATE TRUST COMPANY, Adm'r of the Estate of Joseph H. Steele, Deceased, Plaintiff-Appellant, v. WALKER MANUFACTURING COMPANY, Defendant-Appellee.

Fifth District   No. 78-80

Opinion filed June 7, 1979.

Norton, Bonifield & Associates, P.C., of Belleville (Edward J. Kionka and David M. Uhler, of counsel), for appellant.

Churchill, Nester & McDonnell, of Belleville (Allen D. Churchill, of counsel), for appellee.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff, Illinois State Trust Company, administrator of the estate of Joseph H. Steele, appeals from a judgment of the circuit court of St. Clair County entered upon a jury verdict finding in favor of defendant, Walker Manufacturing Company, in a wrongful death action based upon strict products liability. Plaintiff's only assignments of error on appeal relate to the court's instruction of the jury.

The accident giving rise to the incident occurred on September 28, 1971, while the decedent, Joseph Steele, an airplane mechanic for the United States Air Force and part-time automobile mechanic, was working on the undercarriage of a 1968 Eldorado Cadillac. The automobile, which was supported by four safety jackstands manufactured by the defendant, fell backwards to the ground crushing Steele's head, from which injury he died a few days later.

The jackstands in question consist of a base and an adjustable post which fits inside the base and supports a saddle on which some portion of the automobile rests. The base of the jackstand was of a tripod design which was determined through expert testimony to have a weak and a strong side; that is, the side supported by two legs was less stable than the one-legged side.

Joe Davis, the deceased's employer, was working in the engine area of the same car at the time of the accident. Davis testified that he assisted in placing the jackstands under the automobile the previous day and that each stand had been positioned with the "weak" side toward the rear. Davis, who was himself an instructor, *inter alia*, in the use of safety jackstands at Rankin Trade School, was, prior to this incident, unaware that tripod stands have weak sides. Davis's uncontradicted testimony established that the rear stands had been placed under the automobile first. Davis explained:

"Well, you have to—if you jack up the front end of the car first and put the stands under, your back end is too close to the ground; you must jack the back end up first and put the jack stands either under the frame or axle.

If you are going to do brake work you should put it under the frame and drop down; if you are doing exhaust system work you put it underneath the axle, and keep the axle in the same condition as it was running down the road. On this particular car the muffler is very close to the back axle; it has got new exhaust pipes coming down and over—there is a flexible brake hose—you got a brake fitting—we put this in—Keep the axle in relationship to the car as it was driving down the road, when we do exhaust work."

Davis further stated that he had personally inspected the floor to insure that it was free of debris and that the stands were properly positioned on it.

The saddle on these jackstands consisted of a flat piece of metal approximately 2½ inches wide with a flange or ear projecting upward on each end. At the top the distance between these ears measured approximately 4½ inches wide. The rear axle of the 1968 Eldorado Cadillac measured 3¾ inches and was rectangular in shape as opposed to the round or oval-shaped axles commonly found on passenger

automobiles; thus, the axle in question did not fit completely down into the saddle of the jackstands, but rested in the valley formed by the ears on each end of the saddle. The front cross member, on the other hand, fit properly into the bottom of the saddle. Photographs taken of the scene immediately after the accident reveal that the posts of the stand had been adjusted to the maximum height of 18 inches.

Tom Dolan, professor emeritus of the University of Illinois and an expert in the field of mechanical engineering, testified on behalf of the plaintiff that the placement of the four stands with the weak sides pointed in the same direction, coupled with the failure of the rear axle to fit completely into the saddles of the rear stands, created a highly unstable condition. Dolan theorized that due to the degree of "slop" or "play" existing in the post of the stand, elevation of the front cross member slightly above the rear while placing the stands under the automobile would shift the weight of the vehicle onto the rear stands. This, according to Professor Dolan, resulted in a very precarious situation whereby a mere 100 pounds of lateral force would topple the automobile. Davis denied having applied any lateral force to the car at the time of the accident, but readily agreed that the deceased himself could have applied the necessary force in the course of tightening the connection between the exhaust pipe and the manifold with a socket wrench. In Dolan's opinion, it was entirely foreseeable to a reasonably prudent manufacturer that an experienced auto mechanic, such as either Davis or the deceased, would position the stands so that the weak side of each faced the same direction. In addition, Dolan opined that a reasonably prudent manufacturer would have foreseen that these jackstands would be placed under the rear axle of automobiles having the same dimensions as the 1968 Cadillac.

Lyle Arnes, a safety engineer and defendant's employee, testified pursuant to section 60 of the Civil Practice Act that defendant knew General Motors introduced a square rear axle on certain makes of its automobiles in 1966 and that defendant was aware that tripod type stands contain a weak as opposed to a strong side.

■■ The defense presented only one witness at trial, Professor Ralph Barnett, an expert in the field of mechanical and aerospace engineering. Professor Barnett performed several tests upon the type of jackstand here involved; however, these tests were performed under conditions substantially dissimilar to those existing at the time of the accident in question. For example, in conducting his tests Professor Barnett placed the rear jackstands under the frame rather than the rear axle of the automobile. In addition, the weak sides of the front and rear jackstands were placed in opposite directions. Finally, the stands were not fully extended to a maximum height of 18 inches in the Barnett tests. In our opinion, this evidence had no probative value and should have been

stricken by the court. Professor Barnett testified that in his opinion, the design of these safety jackstands was not unreasonably dangerous. According to his calculations, a lateral force of 335 to 897 pounds was necessary to topple the car in such a manner. The decedent, Barnett opined, could have generated a lateral force of only 200 pounds.

■■ ■ Simply stated, plaintiff contends that the jackstands manufactured and sold by the defendant were unreasonably dangerous due to a lack of warning regarding the hazard of positioning the weak sides of all four jacks in the same direction and the hazard of placing these stands under the rear axle of a 1968 Eldorado Cadillac automobile. It is now clear under Illinois law that a product may be defective solely by its failure to warn of dangers attending its use. (*Williams v. Brown Manufacturing Co.* (1968), 93 Ill. App. 2d 334, 236 N.E.2d 125, *reversed on other grounds* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 338 N.E.2d 90.) The duty to warn, however, arises only where the manufacturer knows or should know of the danger (*Woodill v. Parke Davis & Co.* (1978), 58 Ill. App. 3d 349, 374 N.E.2d 683; *Knapp v. Hertz Corp.* (1978), 59 Ill. App. 3d 241, 375 N.E.2d 1349; *Jonescue v. Jewel Home Shopping Service* (1973), 16 Ill. App. 3d 339, 306 N.E.2d 312), and where unequal knowledge exists on the part of the consumer/user (*Frisch v. International Harvester*; *Peterson v. B/W Controls, Inc.* (1977), 50 Ill. App. 3d 1026, 366 N.E.2d 144). The defendant had a duty to warn in this case since there was unequal knowledge on the part of the decedent, Joseph Steele, and the defendant.

■■ ■ In its answer defendant asserted misuse of the product as an affirmative defense in the following language:

> "Joseph H. Steele used the safety jack stands in question in a manner not intended or foreseeable."

During the instruction conference defendant tendered and the court allowed over plaintiff's objection a burden of proof and an issues instruction which incorporated misuse as an affirmative defense. We note initially that misuse is not, as trial counsel and the court erroneously assumed, an *affirmative* defense.[1] As succinctly expressed by the Illinois Supreme Court Committee on Jury Instructions, IPI Civil No. 400 (1977 Supp.):

> "Misuse of the product by the plaintiff is not an affirmative defense. The issue of misuse 'arises[s] in connection with [the] plaintiff's proof of an unreasonably dangerous condition or in proximate causation, or both.' *Williams v. Brown Mfg. Co., supra* at 431, 261 N.E.2d at 312. Thus, the defendant's denial that the product contained an unreasonably dangerous condition which

---

[1] An excellent article on the nature of this defense is contained in 10 Loy. U. Chi. L. J. 229 (Winter 1979).

proximately caused the plaintiff's injury raises the issue of misuse."

(See also Annot., 13 A.L.R.3d 1057, 1102 n.11 (1967).) The Committee specifically recommended that no instruction on misuse of the product be given. (IPI Civil No. 400.08.) However, at the time of the trial of thie case, the supreme court had not yet published the proposed instructions. Defendant therefore asserts that we should not retroactively apply the Committee's recommendation contained in IPI Civil No. 400.08. We do not believe that our disapproval of this instruction necessarily constitutes a retroactive application of the Committee's recommendation, however. First, the instruction on its face is erroneous in that it characterizes misuse as an affirmative defense. Years before the Committee's recommendation the supreme court in the *Williams* decision had indicated as much.

■■ Misuse of a product has been defined as use of it for a purpose neither intended *nor foreseeable.* (*Williams v. Brown* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1; *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 311 N.E.2d 128; *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 338 N.E.2d 857.) The reasonable foreseeability of the misuse of a product is measured by an objective standard and the question is ordinarily a question of fact for the jury. (*Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94.) Nevertheless, there must be some evidence to support the submission of the issue of misuse to the jury. (*Liberty Mutual Insurance v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77.) We have carefully reviewed the record in this case and have found no evidence that plaintiff's use of the product was not reasonably foreseeable. To the contrary, Professor Dolan testified that both the positioning of the weak sides of the stands in the same direction and the placement of the stands under the rear axle in question were foreseeable. Nowhere is it alleged that the average automobile mechanic should understand design principles of mechanical engineering to the end that he might grasp the danger involved in so positioning the stands. Indeed, even Professor Barnett conceded that a reasonably prudent manufacturer should foresee that the stand in question would be used to support a rear axle of the Eldorado design. Accordingly, we believe that the trial court erred in instructing the jury on the issue of misuse.

■■ Defendant contends that plaintiff has waived any objections by amending or rewording the instructions. While it is true that plaintiff's counsel did participate in certain modifications, plaintiff was careful to preserve for the record his underlying objection in each instance. Also, we do not attach any particular significance to the court's notation at the bottom of the modified instructions that no objection had been made by the plaintiff. The transcript of the instruction conference plainly sets out

the number and nature of plaintiff's objections. We believe this to be controlling.

■■ Finally, defendant contends that it is incumbent upon plaintiff to demonstrate actual prejudice in the giving or refusing of jury instructions in order to warrant remand of the cause. We disagree. Every party has the right to have the jury instructed fairly and correctly. Moreover, an instruction may be given only when evidence exists which supports the theory of the instruction. As stated in *Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 371 N.E.2d 692:

> "If there are no facts in the record which support a theory, an instruction on that theory is prejudicial error. *Schomer v. Madigan* (1970), 120 Ill. App. 2d 107, 255 N.E.2d 620; *Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 285 N.E.2d 217." 56 Ill. App. 3d 873, 879.

From the record in this case we find (1) that it is undisputed that the safety jacks manufactured by the defendant were to be used to support automobiles during repair; (2) that they were being used for that purpose at the time of this accident; (3) that the jacks each had a weak side and a strong side, but that no warning that this was so was ever given by the defendant; (4) that the fact that the jacks had a weak side and a strong side was not within the knowledge of the average repair man; (5) that in order to perform work on the exhaust system, it was necessary to place the jacks on the rear axles; and (6) that defendant knew the dimensions of the rear axle of a 1968 Eldorado Cadillac.

Because we believe the court's instruction to the jury on the issue of misuse was therefore prejudicial error, we shall also consider the additional issues contained in appellant's brief which may arise on remand of the cause.

During the instruction conference plaintiff requested but the court refused to instruct the jury concerning the meaning of the term "unreasonably dangerous." Prior to the trial in this case a conflict existed among the districts in Illinois as to the desirability of such an instruction. In *Pyatt v. Engel Equipment, Inc.* (1974), 17 Ill. App. 3d 1070, 309 N.E.2d 225, the third district held that the term "unreasonably dangerous" requires no definition in a products liability case. (To the same effect is *Gaenzele v. B. E. Wallace Products Corp.* (1976), 39 Ill. App. 3d 93, 350 N.E.2d 571.) However, the fourth district in *Becker v. Aquaslide 'N' Dive Corp.* (1975), 35 Ill. App. 3d 479, 341 N.E.2d 369, ruled that in the context of products liability, the concept of "unreasonably dangerous" is neither generally understood by nor within the common experience of jurors and should therefore be defined by the court. Since the time of the trial in this case the IPI instructions regarding strict liability in tort have been promulgated. Instruction No. 400.06 specifically defines the term

"unreasonably dangerous." Thus, upon remand the court should so instruct the jury.

■■ Plaintiff also contends that the court erred in allowing the following instruction to go to the jury in this case:

> "The defendant, Walker Manufacturing Company, was not, at the time it manufactured and sold the subject Walker Jack stands, an insurer of the safety of the users thereof, nor was it the duty of the defendant, Walker Manufacturing Company, to manufacture jack stands that were accident proof. It was, however, the duty of Walker Manufacturing Company to manufacture a product that was reasonably safe."

The instruction as originally tendered by the defendant did not contain the last sentence. Plaintiff urged the court to include this statement to neutralize the effect of the preceding language. The last sentence notwithstanding, in our opinion this instruction is patently argumentative and should not have been given. Defendant points out in its brief that the instruction as originally offered was expressly approved by the court in *Van Dorpe v. Koyker Farm Implement Co.* (7th Cir. 1970), 427 F.2d 91, and discussed in *Willeford v. Mayrath Co.* (1972), 7 Ill. App. 3d 357, 287 N.E.2d 502. While this is true, we are not bound by that decision and here decline to follow it. Although an instruction may correctly state the law, it may not be given if it misleads the jury (*Graves v. Wornson*), or is argumentative in nature (*Bulleri v. Chicago Transit Authority* (1963), 41 Ill. App. 2d 95, 190 N.E.2d 476). In *Zydeck v. Chicago & Northwestern Ry. Co.* (1947), 333 Ill. App. 388, 77 N.E.2d 830, the court held that an instruction stating that the railroad was under no duty to maintain its platform free from every possible obstruction and defect was argumentative in form and thus properly refused. In *Braswell v. New York, Chicago & St. Louis R.R. Co.* (1965), 60 Ill. App. 2d 120, 208 N.E.2d 358, this court made this statement about a similar instruction:

> "Whether defendant was an insurer of plaintiff's safety was not the issue, and the jury was adequately advised by instructions and both of counsel's arguments as to the theory of the case, the liability and measure of damages, if any. The trial court properly refused the tendered instruction." 60 Ill. App. 2d 120, 136.

We do not dispute that the quoted instruction correctly states the applicable law; however, we believe it is argumentative in form and wholly unnecessary to adequately inform the jury. For these reasons, the instruction should not be given on retrial of this cause.

For the foregoing reasons the judgment of the circuit court of St. Clair County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

KUNCE and KASSERMAN, JJ., concur.