CYNTHIA MORTON, Plaintiff-Appellee, v. F.B.D. ENTERPRISES, Defendant-Appellant.

Fifth District   No. 5—85—0109

Opinion filed March 11, 1986.—Rehearing denied April 10, 1986.

Eugene C. Menges, of Wagner, Bertrand, Bauman & Schmieder, of Belleville, for appellant.

Cook, Shevlin, Keefe & Chatham, of Belleville (Bruce N. Cook, of counsel), for appellee.

JUSTICE JONES delivered the opinion of the court:

The plaintiff, Cynthia Morton, brought suit in negligence against the defendant, F.B.D. Enterprises, after having been injured in a fall on the defendant's business premises when another patron, Mary Helen Bevirt, fell and struck her, thereby causing the plaintiff to fall. The plaintiff maintained that, as a result of the fall, she had suffered a fractured coccyx and a herniated lumbar disc. A jury rendered a verdict in favor of the plaintiff, assessing damages in the amount of $750,000. The trial court denied in its entirety the defendant's post-trial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The defendant has raised seven issues for review, namely; (1) whether the plaintiff failed to prove that "any charge of negligence against this defendant was a proximate cause of the plaintiff's injuries"; (2) whether the trial court erred in allowing "extensive testimony" regarding medical expenses and in admitting "numerous" medical bills into evidence "without sufficient foundation"; (3) whether the trial court erred in instructing the jury that "it is not a defense that a lack of care by a physician may have aggravated plaintiff's damages"; (4) whether the court erred in "denying this defendant the right to present evidence of compliance with applicable ordinances and in denying this defendant's right to an appropri-

ate jury instruction with respect to compliance"; (5) whether the trial court abused its discretion in severing the defendant's third party contribution claim against Mary Helen Bevirt; (6) whether the trial court erred in instructing the jury "with respect to the value of earnings lost instead of instructing the jury as to the value of lost profits where the plaintiff is self-employed"; (7) whether "the conduct of the Court and plaintiff's counsel coupled with other errors den[ied] this defendant a fair trial." Because of the disposition we make in this appeal, we consider only the first issue the defendant raises, that concerning causation. Accordingly, we set forth only those facts relevant to that issue.

The incident in question occurred on December 13, 1980, during a Christmas party held at the Good Times Dinner Theatre in Fairview Heights. The plaintiff was standing near the foot of a two-step stairway waiting to go through a buffet line. Mary Helen Bevirt was standing near the top of this stairway when she fell. In paragraph five of the plaintiff's fourth amended complaint she alleged that the defendant had

"committed one or more of the following negligent acts or omissions:

(A) Negligently and carelessly failed to adequately guard said stairway contrary to Section 616.5 of the B.O.C.A. Code as adopted by the City of Fairview Heights.

(B) Negligently and carelessly failed to have adequate handrails in the stairway contrary to Section 616.5 of the B.O.C.A. Code as adopted by the ordinance of Fairview Heights.

(C) Negligently and carelessly failed to adequately maintain the stairway.

(D) Negligently and carelessly failed to warn persons standing in line that an unguarded stairway without handrails was in the path of the line when they knew, or should have known, that such was a hazard to plaintiff."

At the close of the plaintiff's evidence, she moved orally to amend

"the complaint dealing with the particulars of negligence that I charge. I previously charged negligently and carelessly failed to adequately guard contrary to the B.O.C.A. code, negligently and carelessly failed to have adequate handrails, contrary to the B.O.C.A. code. I would ask leave of the Court to strike the references to the B.O.C.A. code in A and B in the particulars of that complaint. In addition, I would ask to add paragraph 3 which states, negligently and carelessly failed to adequately

light the stairway, to the particulars of negligence. D remains the same."

The trial court granted leave to amend in the respects mentioned.

Mary Helen Bevirt testified for the plaintiff, stating that she had followed the rest of her party, which was numerous, to stand in the "food line." She and her husband and another couple, she said, were at the end of the line. To get to the buffet table patrons had to descend the two-step stairway. The plaintiff was standing in line in front of the witness, and the witness' husband was, she said, standing to the left of the witness and behind her. She acknowledged that she knew there was a step there. Asked, "How close to the edge were you standing?" she answered, "Well, I wouldn't have went [sic] right to the edge. Maybe a couple of inches from the edge." She stated that she did not know that she was standing right at the edge of the step but that she knew she was at the top of the step. She said there was no guardrail or handrail at the top of the steps. When she was asked, "What caused you to fall?" she responded, "I believe that the step was too heavily carpeted and I thought I was standing on a step and there was nothing under the carpeting." Asked further, "You just kind of slipped off?" she answered, "And my foot just folded over." Asked, "Now, there wasn't any rail for you to catch yourself on?" she responded, no. She said she thought that the front part of her foot, as opposed to her heel, had slipped. She responded in the negative to the following: "Did you realize there was too much carpet there? Did you realize that you were standing there, that you were standing that close to the edge of the step?" She likewise responded in the negative to the question whether there was anything to indicate to her that she was standing "that close" to the edge of the step unless she looked directly down. Asked what happened when she fell, she responded, "I just fell completely backwards. I don't know why. I didn't get hurt." She said she "landed" on "[m]y seat and my back."

On cross-examination the witness said that the plaintiff and her husband had gone down the steps in front of the witness, who had stopped at the top of the steps. She stated that her husband was on her left and that her right shoulder was "aimed down the step." She had felt, she said, no pressure from the line to move forward and had not been pushed. She stated further that the lighting was not a problem and that she knew the step was there, having seen both steps. She indicated that her right foot had slipped out and that she had fallen back. She had, she said, been "shifting." She did not know where her arms were. She had nothing in her hands. She indicated that she had fallen because the front part of her right foot had slipped

over the edge of the step. Asked, "And if I understood you correctly, it felt to you like there was too much carpeting on the step?" she answered, "Correct." She did not, however, look after she fell to see whether the carpeting was in the condition in which she believed it to have been. Asked on redirect, "Did you know when you were edging forward that you were at the very edge of the step, at the very edge?" she responded, "Well, probably not, no."

The plaintiff testified that Mary Helen Bevirt had fallen against her and knocked her down. The plaintiff's husband, Robert Morton, testified that he had seen Mary Helen Bevirt fall and that when she fell he was standing "[d]irectly behind her, to the side of her." He said that they were "single file in the line" and that "the line was going straight ahead and it stopped so we stopped and we turned sideways and we were talking to each other." Asked when he first noticed that Mary Helen Bevirt had fallen, he responded, "She just disappeared from the side of me like she went off the end of a scaffold." He had not seen his wife fall but saw both Mary Helen Bevirt and his wife on the floor and aided in helping them up.

Called by the plaintiff as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1102), Thomas Buckley testified that in December of 1980 he was the defendant's president. There was, he said, "a little rail on the sides" of the stairway at the time of the incident. According to plaintiff's exhibits Nos. 1 and 2, which are photographs of the stairway in question taken after the incident occurred, the handrails did not, he said, appear to extend to the top of the stairway and a person would have to step down one step before coming to the rail. Each handrail is attached to a wall, or guard, on either side of the stairway. The two handrails are as long as the two walls, or guards, are wide. The walls, or guards, appear to be a few feet high. The witness "assume[d]" that each handrail extended only as far as the wall is wide, "because if it sticks out why somebody might run into it."

Robert Hotz, an engineer employed as the public works director for the city of Fairview Heights, testified for the plaintiff that with regard to the handrailings pictured in plaintiff's exhibits Nos. 1 and 2 the stairway was not a safe one because of the absence of a "continuous handrail" extending both 18 inches above and 18 inches below the steps, in accordance with the BOCA Basic Building Code, a national code adopted by the city of Fairview Heights. On cross-examination, the defendant attempted to show that, by virtue of the definitions of the BOCA code, the section of the code upon which plaintiff had relied did not apply to the stairway involved here. On redirect examina-

tion, the witness stated that, as a matter of engineering, where there is a stairway there should be a continuous handrail. Asked, "Regardless of what the BOCA code says and regardless of what the definitions say, based upon a reasonable degree of engineering certainty, in your opinion is the stairway that is shown in these pictures, is that a safe stairway?" The witness answered, "I do not feel it is a safe stairway."

After the plaintiff rested and amended its fourth complaint orally, as described above, the defendant moved for a directed verdict, which motion the trial court denied. The jury was instructed in part as follows:

> "The plaintiff claims that she was injured and sustained damage and that the defendant was negligent in one or more of the following respects:
>
> (A) Negligently and carelessly failed to adequately guard stairway.
>
> (B) Negligently and carelessly failed to have adequate handrails in the stairway.
>
> (C) Negligently and carelessly failed to adequately light the stairway.
>
> (D) Negligently and carelessly failed to warn persons standing in line that an unguarded stairway without handrails was in the path of the line when they knew, or should have known, that such was a hazard to plaintiff.
>
> The plaintiff further claims that one or more of the foregoing was a proximate cause of her injuries."

On appeal, as at trial, the defendant contends that there was "no evidence to support even an inference that any alleged act or omission of this defendant as charged by plaintiff was a proximate cause of plaintiff's alleged injuries," arguing as follows:

> "In the instant action plaintiff has charged this defendant with a failure to properly light the area, a failure to adequately guard the steps, a failure to have adequate handrails and a failure to warn that there were no guards and no handrails. *** The woman who fell testified that she slipped and fell backwards on the edge of the step because the carpeting was too thick. The plaintiff failed to prove that any charged act or omission was a proximate cause of plaintiff's alleged injuries. A failure to adequately light the area cannot be a proximate cause of the alleged injury as the woman that fell testified that lighting was not a problem and she saw the step. A lack of adequate guards or handrails or a failure to warn of same cannot

raise an inference of proximate cause as the woman who fell testified that she fell because the carpeting was too thick and there was no testimony that the lack of guards or handrails at the top of the step contributed in anyway to the fall or could have prevented or lessened the fall in any respect."

The plaintiff counters that "[w]hile we, of course, could not prove to a certainty that location of the guardrail at the top would have given notice to Mrs. Bevirt as to the precise location of the step, nor could we ever be positive that an appropriate handrail would have enabled her to catch herself, these facts certainly give rise to an inference of negligence."

■ In order that liability may attach for a negligent act or omission, such a relationship must exist between the act or omission and the injury or damage suffered that the act or omission may be said to be the cause of such injury or damage. (*McInturff v. Chicago Title & Trust Co.* (1968), 102 Ill. App. 2d 39, 243 N.E.2d 657.) As we explained in *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 333, 369 N.E.2d 1284, 1292, *aff'd in pt., rev'd in pt.* (1979), 76 Ill. 2d 154, 390 N.E.2d 859,

" 'Proximate cause' is a term of art which encompasses the distinct concepts of cause in fact and legal cause. Determining whether the defendant's conduct was a cause of plaintiff's injury involves nothing more than an analysis of the facts. Once it is established that the defendant's conduct has in fact been a cause of the injury, however, there remains the question whether the defendant should be legally responsible for what he has caused. As otherwise stated, the question is whether the policy of the law will extend defendant's responsibility to the consequences which have in fact occurred.

Two tests are generally applied in determining the issue of causation in fact. Under the 'substantial factor' test, the defendant's conduct is a cause of an event if it was a material element and a substantial factor in bringing it about. Under the second test, commonly called the 'but for' rule, the defendant's conduct is not a cause of an event if the event would have occurred without it. [Citations.]"

■ In keeping with our depiction in *Kerns* of the term "proximate cause" as embracing both "cause in fact," a factual question for the trier of fact, and "legal cause," a question of law for the court, we wish to be specific in stating that in this case we are concerned with "cause in fact," the factual aspect of the term "proximate cause." We believe the delineation to be necessary, since many cases

consider an issue stated to be that of "proximate cause" without specifying whether they are concerned with "cause in fact," the factual issue, or "legal cause," the legal or duty issue. (*Cf. Lemings v. Collinsville School Dist. No. 10* (1983), 118 Ill. App. 3d 363, 454 N.E.2d 1139 (specially concurring opinion).) Liability cannot be predicated upon surmise or conjecture as to the cause of the injury; cause in fact can be established only when there is a reasonable certainty that the defendant's conduct caused the injury. (*Potter v. Edgar* (1975), 34 Ill. App. 3d 33, 339 N.E.2d 321.) A plaintiff who fails to establish the element of cause in fact has not sustained the plaintiff's burden of making a *prima facie* case in negligence. (*Kimbrough v. Jewel Companies, Inc.* (1981), 92 Ill. App. 3d 813, 416 N.E.2d 328; *Potter v. Edgar* (1975), 34 Ill. App. 3d 33, 339 N.E.2d 321.) Where no facts are put forth by the plaintiff to show that the injuries sustained were caused or contributed to by an act or omission of the defendant, a judgment based on such evidence cannot be sustained. *Vance v. Lucky Stores, Inc.* (1985), 134 Ill. App. 3d 166, 480 N.E.2d 167; *Kimbrough v. Jewel Companies, Inc.* (1981), 92 Ill. App. 3d 813, 416 N.E.2d 328; *Truelsen v. Levin* (1974), 24 Ill. App. 3d 733, 321 N.E.2d 528.

In the instant case Mary Helen Bevirt testified that she believed she fell because the top step was too heavily carpeted. She expressly stated that the lighting presented no problem, that she had, indeed, seen the step on which she slipped. Although she testified that there was no handrail, she did not at any time indicate that an absence of such a railing contributed in any way to her fall. Nor did she indicate in any way that an inadequacy with regard to the wall, or guard, along the stairway had any bearing upon her fall. Although the plaintiff in her fourth amended complaint alleged that the defendant had "[n]egligently and carelessly failed to adequately maintain the stairway," she abandoned that allegation at trial, and the jury was not instructed concerning the defendant's failure to maintain the stairway. Upon the evidence adduced, there was no relationship shown between the defendant's conduct, as charged in the instructions to the jury, and Mary Helen Bevirt's fall, which, in turn, caused the plaintiff's fall. The defendant's conduct, as alleged in the instructions to the jury, may hardly be said, upon the evidence, to have been a material element and a substantial factor in bringing about Mary Helen Bevirt's fall. Similarly, it cannot be said upon this evidence that "but for" the defendant's conduct, as alleged in the instructions to the jury, Mary Helen Bevirt would not have fallen. Accordingly, the plaintiff failed to show causation in fact. Having failed to establish a *prima facie* case, the plaintiff failed to meet her requisite burden of proof. Although the

jury found negligence on the part of the defendant and, necessarily, found causation in fact, the record furnishes insufficient evidence upon which a finding of causation in fact could be based. For these reasons we must reverse the judgment of the trial court.

Reversed.

KASSERMAN, P.J., and KARNS, J., concur.