John J. WHETSTINE,
Plaintiff–Appellant,

v.

The GATES RUBBER COMPANY and
Squibb–Taylor, Inc.,
Defendants–Appellees.

No. 89–1388.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1989.

Decided Feb. 7, 1990.

denied defendants' motion for summary judgment. However, after review of their motion to reconsider, the court granted summary judgment in favor of both defendants. We affirm the district court's determination.

*Facts*

On June 5, 1984, in the course of his employment, Whetstine was transferring anhydrous ammonia from one tank to another when the hose used for the transfer burst, causing the injuries which are the subject of plaintiff's complaint. Whetstine alleged that Gates was strictly liable for his injuries because the rubber and underlying fabric of the hose it manufactured were defective and too weak to withstand foreseeable use under pressure. The plaintiff also alleged that Gates negligently designed a hose that was not chemical-resistant, negligently sold it without adequate instructions for its use, and failed to discover and correct the defective condition or to warn future users of the danger. Allegations of negligence asserted against Squibb were that Squibb negligently sold a defective hose not fit for the use intended, failed to inspect the hose for defects before selling it, and failed to discover and correct the defective condition or to warn later owners of the danger.

Whetstine did not timely comply with the pretrial requirement of disclosing the expert witnesses he intended to present at trial. On October 21, 1987, the court ordered plaintiff to identify his experts within sixty days. At the expiration of that period the court extended the time, despite defendants' motion to bar plaintiff's expert testimony. However, when the plaintiff again failed to comply with the court's discovery order and defendants renewed their motion to bar his experts, the court granted defendants' motion.

Thereupon defendants filed a motion for summary judgment, asserting that there was no genuine issue as to any material

David A. Novoselsky, Novoselsky & Associates, Chicago, Ill., Elmo E. Koos, Sr., Peoria, Ill., for John J. Whetstine.

Karen L. Kendall, Heyl, Royster, Voelker & Allen, Peoria, Ill., for Gates Rubber Company, a foreign Corporation.

Murvel Pretorius, Jr., Quinn, Johnston, Henderson & Pretorius, Peoria, Ill., for Squibb–Taylor, Inc., a foreign Corporation.

Before EASTERBROOK and MANION, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

To recover for injuries suffered when a hose containing anhydrous ammonia exploded, John J. Whetstine brought an action on June 4, 1986 against The Gates Rubber Company [Gates], manufacturer of the hose, and Squibb–Taylor, Inc. [Squibb], distributor of the hose, alleging strict liability and negligence.[1] The district court first

[*] Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. The strict liability claim against Squibb was dismissed by the court's order of December 12, 1986.

fact. First, they stated that the condition of the hose was sound: It was neither defective nor unreasonably dangerous in its design or manufacture; it was reasonably fit and sufficiently strong for its intended use under pressure; and it was reasonably resistant to corrosive chemicals. Moreover, they indicated that the hose was sold with adequate instructions. Defendants then asserted the cause of the accident: The discharge hose had been at an angle when Whetstine was preparing to fill the tank through that hose, and the improper manner in which the hose was fastened to the nurse tank caused the hose to explode.

In support of their motion, defendants offered plaintiff's deposition and the affidavit of Professor Mansel Mayeux, professor emeritus of agricultural engineering at Louisiana State University, with broad experience in the area of anhydrous ammonia hose design, manufacture and safety. Professor Mayeux's affidavit described the results of his examination of the hose and anhydrous ammonia nurse tank [2] claimed to be involved in the accident. After observing the connection of the hose to the tank and analyzing the condition of the hose, he drew the following conclusion concerning the hose rupture:

2. A nurse tank is a portable tank attached to a pickup truck. When a farmer requested delivery of anhydrous ammonia from plaintiff's employer, W.R. Grace Co., an employee would drive a nurse tank to an above-ground storage tank, fill the nurse tank with the liquid, drive the tank to a weighing station, and then deliver the anhydrous ammonia to the farm. It was during the transfer of anhydrous ammonia from the storage tank to the nurse tank that the accident occurred.

3. At the deposition, counsel for defendants showed Whetstine the four photographs attached as an appendix to this opinion as exhibits for him to identify. He distinguished exhibit #4 by explaining that only a few of the tanks had valves "fastened on the ends of the roll cage," as in that photograph. Most of the valve fittings, he stated, were at the angle shown in exhibits 1, 2 and 3. Whetstine testified as follows:

> Q Was the valve on the tank that you were getting ready to fill when you had your accident, was it fastened onto the tank in the same position as the one shown in the photograph, Exhibit Number 2?
> A Yes, sir.

In my opinion, the cause of the burst of the hose on June 5, 1984, was the improper manner in which the hose was affixed to the nurse tank creating a sharp radius of bend in the hose which unreasonably and unforeseeably stressed the hose beyond its breaking point and the fact that the hose was left full of anhydrous ammonia after it was used just prior to the accident of June 5, 1984.

The defendants' expert witness also gave his opinion that neither the fabric nor the design of the hose was defective or unreasonably dangerous and that the hose "was reasonably fit for its intended use and was of sufficient strength to withstand use under foreseeable pressures and conditions." Professor Mayeux found the hose reasonably resistant to corrosive chemicals, particularly anhydrous ammonia, and the instructions adequate for "knowledgeable and sophisticated users of such products."

Defendants also appended plaintiff's deposition to their motion for summary judgment, and indicated the portions of his statement in which he testified that the valve fitting and discharge hose were fastened to the tank at a sharp angle, as seen in photographs of tanks and hoses before him during the taking of the deposition.[3]

> Q And that would be the same as the ones that are in 1 and 3 also, as far as the position, the angle that the valve was fastened onto the nurse tank?
> A Yes, sir.
> Whetstine deposition at p. 21.
> Q And the one that, the tank that you were getting ready to fill on the day you had the accident, the valve fitting was fastened at the angle as in 1, 2, and 3?
> A Yes, sir.
> Whetstine deposition at pp. 22-23.
> Q All right. When you got ready to fill the tank the discharge hose, shown like the one that's shown in Exhibit Number 2, was at the angle that's shown in that photograph Number 2 except it was pressurized, the hose itself?
> A Yes.
> Q How does it look different when its pressurized?
> A The hose is a little more stiffer and more rigid than this one.
> Whetstine deposition at 25.

Plaintiff Whetstine filed a motion to strike the motion for summary judgment, contending that there was an issue of fact as to the placement of the hose. In support of this motion, Whetstine attached the affidavit of Larry Lark, the plant manager for W.R. Grace, plaintiff's employer. Lark stated that the hose

> was installed on a certain nurse tank in like fashion as all other hoses were installed on comparable nurse tanks and that no portion of the hose was in a right angle crimped position caused by its installation or use by Affiant or any employee of W.R. Grace prior to or on June 5, 1984.

On September 29, 1988, the trial court found that the affidavits of Mayeux and Lark conflicted regarding the attachment of the hose and valve, and therefore denied defendants' motion for summary judgment. Moreover, the court allowed Lark to testify as an occurrence witness for plaintiff at trial, even though it had barred expert testimony.

Defendants sought reconsideration of the ruling. They argued that the only evidence concerning defects in the design or manufacture of the hose was given by the expert Mayeux. Because Mayeux affirmed that there was no defect, there was no evidence from which any inference in favor of the plaintiff could be drawn. Furthermore, no genuine issue of material fact was raised by Lark's affidavit, since he did not deny that the hose was at a right angle, but rather stated that the position of the hose was not the result of its installation by Lark or any other employee of Grace prior to the accident. Plaintiff Whetstine did not file a response to the Motion to Reconsider.

### Order of the District Court

On January 24, 1989, the district court reconsidered its denial of summary judgment and was convinced by defendants' arguments that there was no genuine issue of material fact to preclude the court from entering summary judgment in favor of defendants. After summarizing the substantive law pertaining to plaintiff's allegations, it found that, because the Mayeux affidavit stated that the hose components were not defective or unreasonably dangerous, and because Whetstine submitted nothing to contradict Mayeux's statement, plaintiff failed to meet his burden of proving his strict tort liability claim.

The court then turned to the negligence allegations. In its earlier denial of summary judgment, the court had found a genuine issue of material fact in the conflicting Mayeux and Lark affidavits regarding the proximate cause element of Whetstine's negligence claim. However, upon re-examination of the affidavits, the court found

> that Lark merely states that he did not connect the hose at a right angle and that no other W.R. Grace employee did so. Lark's affidavit does not state that the hose in question was not positioned at a right angle vis a vis the nurse tank [at the time of the accident], so it does not contradict Mayeux's affidavit.

Order of January 24, 1989 at 6. Thus, the court interpreted Lark's statement to deny the responsibility of Lark or any other employee of W.R. Grace for the position of the hose, but not to contradict Mayeux's affidavit and Whetstine's deposition testimony that the position of the hose was at a sharp angle. Furthermore, since Whetstine did not respond to the motion to reconsider, no evidence was offered by the plaintiff to contradict Mayeux's expert opinion that the two causes of the hose's rupture were the improperly bent manner in which it was attached to the nurse tank and the practice of leaving the hose full of anhydrous ammonia after its use. As a consequence, the court held that there was no genuine issue of material fact concerning any element essential to establish a cause of action for negligence or for strict tort liability, and granted summary judgment in defendants' favor.

### Summary Judgment

■ When reviewing a district court's grant of summary judgment, this court must determine "whether the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to the judgment as a matter of

law." *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 360 (7th Cir.) (per curiam), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987), *quoted in Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir. 1989). The moving party has the burden of establishing the lack of such an issue.

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Once the movant has made a properly supported motion, the nonmovant has the responsibility of going beyond the pleading and setting forth specific facts demonstrating the existence of a genuine issue of fact for trial. *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 567 (7th Cir.1989); *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1031–32 (7th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). *See Celotex*, 477 U.S. at 325. A material fact must be "outcome determinative under the governing law." *Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir. 1986) (quoting *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983)). The fact is genuinely disputed when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *quoted in Mays v. Chicago Sun–Times*, 865 F.2d 134, 136 (7th Cir.), *cert. denied sub nom. Platt v. U.S. Court of Appeals for the Seventh Circuit, et al.*, — U.S. ——, 110 S.Ct. 259, 107 L.Ed.2d 209 (1989). Thus, the nonmovant must produce proper documentary evidence to support his contentions. *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987).

Appellate review of a summary judgment determination requires that we examine the record as a whole. If that record "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). We must undertake a *de novo* review of the record, *Central States, S.E. & S.W. Areas Pension Fund v. Jordan*, 873 F.2d 149, 152 (7th Cir.1989), and draw all reasonable inferences from the record in the light most favorable to the nonmovant. *Matsushita Electric*, 475 U.S. at 587, 106 S.Ct. at 1356; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 937 (7th Cir.1989).

### Issues

In his argument on appeal, plaintiff Whetstine raised three challenges to the district court's grant of summary judgment.

### 1. *Affidavit of Expert Witness*

Whetstine asserted that Professor Mayeux's expertise was limited to agricultural engineering; because he was not a fertilizer dealer, he could not properly offer the opinion that "the hose was sold with adequate instructions for the use for which it was intended by farm fertilizer dealer employees." Moreover, declared plaintiff, Mayeux's affidavit statements were conclusory in nature. The court finds that these attacks on the admissibility of expert opinion were not raised in the court below, and thus were waived on appeal. *See Altobello v. Borden Confectionary Products, Inc.*, 872 F.2d 215, 216 (7th Cir.1989); *Adelman–Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517, 522 n. 5 (7th Cir.1988).

**393**

### 2. Elements of Misuse and Duty to Warn

Whetstine also insisted that the court improperly considered the element of misuse of a product, when misuse should have been a factor only in apportioning damages or comparing negligence. According to the appellant, the crucial issue in the district court's determination was defendants' contention that the hose was misused, since it was attached to the nurse tank at an angle. In the alternative, Whetstine argued that, if there was a misuse of the product, and if that misuse was reasonably foreseeable, then defendants had a duty to warn plaintiff, but did not do so.

■ We find that plaintiff has mischaracterized the district court's analysis of the issues. The court turned to the substantive law underlying the plaintiff's claims to determine whether a genuine issue of material fact existed. The first count, sounding in strict torts liability, required proof of three elements: (1) an injury resulted from a condition of the product, (2) the condition of the product was defective and unreasonably dangerous, and (3) the condition existed at the time that the product left the manufacturer's control. *D'Olier v. General Motors Corp.*, 145 Ill.App.3d 543, 547, 99 Ill.Dec. 305, 308, 495 N.E.2d 1040, 1043 (1986), *quoted in Norman v. Ford Motor Co.*, 160 Ill.App.3d 1037, 1041, 112 Ill.Dec. 444, 446, 513 N.E.2d 1053, 1055 (1987). The district court reviewed the record and found that Whetstine did not meet his burden of proving the second essential element for a *prima facie* case of strict liability. It then turned to the second count, alleging negligence. For a defendant to be liable for negligence, a plaintiff must establish that the defendant had a duty toward plaintiff, defendant breached that duty, and the breach was a proximate cause of the plaintiff's injury. *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill.App.3d 46, 48, 105 Ill.Dec. 254, 256, 504 N.E.2d 123, 125 (1987), *quoted in Norman*, 112 Ill.Dec. at 445, 513 N.E.2d at 1054. Here, the trial court concluded that Whetstine did

not bear the burden of proving the element of causation.

■ In no portion of its order did the court consider plaintiff's misuse of the product or defendants' duty to warn. Nor should those elements have been addressed. Under Illinois law, misuse of a product is not an affirmative defense; rather, absence of misuse is part of plaintiff's proof of an unreasonably dangerous condition or of proximate cause. *Schwartz v. American Honda Motor Co., Inc.*, 710 F.2d 378, 381 (7th Cir.1983), citing *Illinois State Trust Co. v. Walker Manufacturing Co.*, 73 Ill.App.3d 585, 589, 29 Ill.Dec. 513, 516, 392 N.E.2d 70, 73 (1979). Plaintiff did not allege absence of misuse in his complaint, amended complaint or elsewhere in the record. Nor was it raised by the district court; in granting summary judgment the court found that the plaintiff offered no specific evidence disputing "the causes of the hose's bursting" that were offered by defendants' expert witness in support of the summary judgment motion. A plaintiff who fails to establish the element of proximate cause or cause-in-fact has not sustained his burden of making a *prima facie* case in negligence. *Morton v. F.B.D. Enterprises*, 141 Ill.App.3d 553, 560, 95 Ill. Dec. 903, 907, 490 N.E.2d 995, 999 (1986), *quoted in Cornstubble v. Ford Motor Co.*, 178 Ill.App.3d 20, 34, 127 Ill.Dec. 55, 64, 532 N.E.2d 884, 893 (1988). The trial court based its ruling on plaintiff's inability to prove each element of his claim; by no plausible reading can that decision be construed to be based on misuse of the product.

■ In addition, the court order properly did not consider defendants' duty to warn. The Supreme Court of Illinois has made clear that the determination of whether a duty to warn exists is a question of law rather than fact. *Genaust v. Illinois Power Co.*, 62 Ill.2d 456, 466, 343 N.E.2d 465, 471 (1976). A duty to warn is not required where the product is not defectively designed or manufactured. *Genaust*, 62 Ill.2d at 467, 343 N.E.2d at 471, *quoted in Harms v. Bell Helicopter Textron, a division of Textron, Inc.*, 567 F.Supp. 28, 31

(N.D.Ill.1982), *aff'd,* 714 F.2d 149 (7th Cir. 1983). Defendants' expert witness stated that "[t]he anhydrous ammonia hose which I examined was not defective or unreasonably dangerous in its design or in its manufacture," and that, in his opinion, "no defective or unreasonably dangerous condition of design or manufacture contributed to cause the burst of the hose on June 5, 1984." Plaintiff offered no evidence to rebut that testimony. Thus, there was no issue of defect in the design or manufacture of the hose, and consequently no duty to warn.

3. *Question of Fact: angle of the hose*

◼ Whetstine's third contention was that the district court erred, after reviewing defendants' motion for reconsideration, in finding that Lark's affidavit did not create a question of fact as to the placement of the hose. Plaintiff argued that the court mistakenly dwelled on its interpretation of only one sentence in the Lark affidavit, without considering a subsequent statement:

> [T]he adaptor and the fitting on the nurse tank were not installed in such a manner that the hose approached the adaptor at a right angle to the nurse tank causing the hose to assume a sharp angle adjacent to the hose and valve.

If the court had properly considered this unequivocal phrase and had construed the affidavit evidence in the light most favorable to the nonmoving party, Whetstine insisted, it would have recognized that the angle of the hose was a genuine issue of fact.

After reviewing *de novo* Mr. Lark's affidavit in its entirety, this court affirms the reasoning of the district court. We find the lower court's reading of a portion of

Lark's affidavit to be precise and careful: In it Lark stated that neither he nor any other employee, when installing or using the hose, caused the hose to be in a right angle crimped position. The additional statement, pointed out by plaintiff, indicates that the parts to which the hose was attached, namely the adaptor and fitting, were not installed so that the hose would result in a right angle position.[4] Neither statement by Lark denies that the hose was in fact at a sharp angle. Thus, the Lark affidavit does not create an internal inconsistency with the statements of both the plaintiff and Professor Mayeux that the hose was, as the photographs indicated, sharply angled. In fact, plaintiff's counsel underscored the court's conclusion by telling the court at oral argument that "we're not stating that this man [Lark] intended in any way to contradict the plaintiff in his testimony."[5] As a result, we conclude that the district court correctly judged that no genuine issue of material fact has been created by statements concerning the angle of the hose.

A more basic reason for granting summary judgment on this issue is plaintiff's failure to respond to defendants' motion for reconsideration. In that motion, defendants properly reasserted their claims for summary judgment and offered a different interpretation of Lark's affidavit statements to demonstrate the absence of a genuine issue of material fact. At that point, the burden again shifted to the nonmovant to set forth the facts necessary to demonstrate a triable issue, or, at least, an alternative reading of the testimony upon which he was relying. Plaintiff did not file any response to defendants' motion. Consequently, judgment was properly entered against plaintiff for failure to make any showing that would establish the existence

---

4. Lark was permitted to testify as an occurrence witness who was present immediately after Whetstine's accident. Pursuant to Federal Rule of Evidence 701, the testimony of a non-expert witness is limited to opinions and inferences which are rationally based on perceptions of the witness and helpful to a clear understanding of the determination of a fact in issue. As such, Lark was not qualified to comment on the cause of the rupture or collapse of the hose.

5. Both the district and appellate courts having determined that there is no contradiction between Lark's affidavit and the plaintiff's testimony, we need not address defendants' assertion that plaintiff should not be allowed to create a question of fact by submission of an affidavit that contradicts his own sworn testimony in order to defeat a motion for summary judgment.

of an element essential to his case and on which he would bear the burden at trial. *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989), quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

## Conclusion

Our decision to affirm the district court's grant of summary judgment is based upon plaintiff's failure to meet his burden of proof as established under the Federal Rules of Civil Procedure. The defendants in this case properly sought summary judgment and filed supporting documents to demonstrate that there were no triable issues of fact. The burden of responding then shifted to the nonmovant, under Rule 56(c), who was required to set forth specific facts showing that there was a genuine issue for trial. The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10; *Posey v. Skyline Corp.*, 702 F.2d 102, 106 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Nonmovant must present "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. at 288–89, 88 S.Ct. at 1592, *quoted in Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510. The Supreme Court further defined the sufficiency of that evidence to be "significant probative evidence tending to support the complaint." *First National Bank of Arizona*, 391 U.S. at 290, 88 S.Ct. at 1593, *quoted in Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

Mr. Whetstine alleged, but did not prove, that the hose was defective and that defendants' negligence proximately caused his injuries. Plaintiff's claim that there was a factual dispute concerning the position of the hose, offered in opposition to defendants' summary judgment motion, did not raise a genuine issue of material fact. Thereafter Mr. Whetstine presented no evidence in opposition to defendants' motion for reconsideration of summary judgment. Thus the plaintiff met his burden of proof, as nonmovant, only inadequately when responding to the motion for summary judgment, and not at all when responding to the motion for reconsideration. Summary judgment will not lie if the nonmovant's evidence is insufficient or nonexistent. Accordingly, we AFFIRM the district court's grant of summary judgment.

APPENDIX

EXHIBIT #1

EXHIBIT #2

EXHIBIT #3

EXHIBIT #4